THE CITY OF CHAMPAIGN, Plaintiff-Appellant, *v.* THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

Fourth District    No. 16270

Opinion filed October 31, 1980.

Kurt P. Froehlich, of Phipps & Evans, of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana, and Tyrone C. Fahner, Attorney General, of Chicago (Kurt McKenzie, Assistant State's Attorney, and Karen Konieczny, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal concerns the actions of the Department of Revenue of the State of Illinois (Department) to correct and reallocate taxes collected by it on behalf of the City of Champaign (City) and the County of Champaign (County) under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 440 *et seq.*). Cities (Ill. Rev. Stat. 1979, ch. 24, par. 8—11—1) and counties (Ill. Rev. Stat. 1979, ch. 34, par. 409.1) are permitted to impose a tax in addition to the tax imposed by the State. The tax imposed by the municipalities and counties is collected, administered and enforced by the Department, which periodically remits to the municipalities and counties their share of the collections, less an amount payable to the State to compensate it for its collection and administrative costs.

The Department had been collecting and remitting for both the City and the County. An audit revealed that two commercial enterprises were located in reality in the County and not in the City. For about five years prior to January 1980, taxes collected on account of these establishments had been remitted to the City in the total amount of $479,718.41. By letter, dated January 18, 1980, addressed to the City and the County, the Department proposed to adjust this amount over a period of 36 months by deducting from current payments to the City the sum of $13,300 per month for 35 months and $14,218.41 for one month. The same amounts would be paid to the County at the same times.

Following receipt of this letter, the City filed suit in the circuit court of Champaign County against the County and the Department. The suit sought a temporary and permanent injunction, declaratory judgment, and administrative review or *certiorari*. If any of the relief were granted, the net effect would be to allow the City to retain the $479,718.41 already paid to it, but to allow future payments on account of the two establishments located in the County to be paid to it.

The County filed a motion to dismiss under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45). Although the record is not entirely clear on the point, it seems assumed by the parties that the Department, through the Attorney General of Illinois, joined in the motion. Memoranda of law were submitted to the trial court by the City and the County. After argument on the motion, the trial court dismissed the counts of the complaint seeking injunctive relief and administrative review or *certiorari* and declared the rights of the parties under section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57.1) as follows: that the Department's actions were not unconstitutional nor unlawful, and that the Department may not be limited in its adjustment and reallocation of taxes to the current fiscal year. The City appeals, and we affirm.

On appeal four principal issues are raised: (1) the power of the Department to adjust future tax payments in order to correct past errors, (2) the time within which such adjustments of past errors may be made, assuming the power to adjust exits, (3) the necessity of the adoption of rules by the Department before any adjustments may be made, and (4) the lack of administrative review or *certiorai* in these proceedings.

As to the first issue: there is no dispute that the amount of tax involved is correct nor is there any dispute that the establishments generating the tax are physically located in the County rather than in the City. There is some dispute as to whose obligation it was to determine the precise location of these establishments. The statute involved is section 39b32 of the Civil Administrative Code of Illinois (Ill. Rev. Stat. 1979, ch. 127, par. 39b32), which reads as follows:

> "When the Department, through its own error, has entered State tax on its records under the wrong designation (such as recording a use tax payment as retailers' occupation tax, or a retailers' occupation tax payment as use tax, etc.), to correct such error on its records and to notify the State Treasurer of the change so that he can make the necessary corresponding changes in his records in case the erroneous entry has been made in his records. If the erroneous entry in the Department's records is due to a mistake in reporting by the taxpayer and the taxpayer agrees that he has made a reporting error which should be corrected, the Department may correct its records accordingly and notify the State Treasurer of the change so that he can make the necessary corresponding changes in his records in case the erroneous entry has been made in his records. The Department may similarly correct errors in the distribution, as between municipalities and counties, of taxes which are imposed by such municipalities and counties but collected for them by the Department as agent, and errors by which

State taxes are erroneously credited as municipal or county tax or by which municipal or county taxes are erroneously credited or recorded as State tax, giving such notices to the State Treasurer as may be necessary to enable him to make corresponding corrections in his records."

As will be noted, the first two sentences of the statute deal with correction of records. The City's first argument is that the word "similarly" which is used in the third sentence limits the power of the Department to the correction of records only. Stated another way, the argument is that the first two sentences refer to past errors and "similarly" limits the third sentence to the same subject matter; therefore, the Department under the third sentence may only correct prospective errors in records. We believe that such an argument is contrary to logic and to the plain wording of the statute.

Any correction would necessarily be of something which has already occurred. One cannot correct a thing which has not yet happened, and if a proper correction has been made, nothing would be necessary in the future unless there is a change of fact or of status. A "fact" is "a thing done." (Webster's New International Dictionary 908 (2d ed. 1934).) A correction of fact must by its nature be retrospective in character.

Of equal importance is the language of the statute itself. The first two sentences speak of correction of *records*. The third sentence which is at issue here speaks of corrections in *distribution*. Tax money is considered "distributed" when there has been an actual delivery of it to those entitled to it. *People v. Dime Savings Bank* (1932), 350 Ill. 503, 183 N.E. 604.

Thus the statute is aimed at either of two events which have occurred in the past: (1) the correction of a record—there could be no correction unless a record had already been made; or (2) the correction in a distribution—there could be no correction unless there had already been a past event, distribution (*Dime Savings Bank*). The City's argument that the statute is prospective only cannot stand.

The City next argues public policy, *viz.*, that it would be against public policy to require it to refund the tax monies (improperly paid over to it since it has relied on them in preparing its budget and providing for its services.

■■ At the outset, it must be noted that there is nothing before this court on the subject of the City's financial picture except references in its brief. These are insufficient and will be disregarded. *Town of Normal v. Witham* (1968), 91 Ill. App. 2d 262, 233 N.E.2d 576.

Furthermore, we find the public policy enunciated in the statute which permits a correction in distribution of tax money. The supreme court has said, "The public policy of a State is to be found embodied in its constitution and its statutes. When these are silent upon the subject, then

in the decisions of its courts." *People ex rel. Nelson v. Wiersema State Bank* (1935), 361 Ill. 75, 86, 197 N.E. 537.

Even if the question of reliance were properly before us, we do not feel that the argument is well taken. To rely upon anticipated tax revenues, particularly those which are tied to the business cycle, is to lean upon a broken reed. All such revenues are estimates at best. This is acknowledged by statute (Ill. Rev. Stat. 1979, ch. 24, par. 8—2—9.3) which speaks of "estimates of revenues" and "revenue estimates."

The City's reliance upon *Lemon v. Kurtzman* (1973), 411 U.S. 192, 36 L. Ed. 2d 151, 93 S. Ct. 1463, is unjustified. In a prior proceeding the Supreme Court had declared unconstitutional a Pennsylvania statute which gave certain aid to nonpublic sectarian schools. (*Lemon v. Kurtzman* (1971), 403 U.S. 602, 29 L. Ed. 2d 745, 91 S. Ct. 2105.) On remand, the District Court enjoined further aid to the schools but permitted reimbursement by the State of Pennsylvania for expenditures already made. It was the latter part of the order which was the subject of the second appeal. There was no claim for refund, as argued by the City. The essential holding was to allow what the court characterized as "only a ministerial 'cleanup' function." 411 U.S. 192, 202, 36 L. Ed. 2d 151, 93 S. Ct. 1463, 1470.

*Lemon*, like many other cases, involved tax money paid under a statute which was afterwards declared unconstitutional. Generally such payments made under a mistake of law are not recoverable, although *Lemon* permitted an exception based on equitable grounds. (Compare *Illinois Merchants Trust Co. v. Harvey* (1929), 335 Ill. 284, 167 N.E. 69.) On the other hand, money paid under a mistake of fact is considered recoverable. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415.) The tax monies at issue in the instant case were clearly distributed under a mistake of fact, *i.e.*, the location of the two establishments.

We also note in connection with the reliance argument that the City at all times had access to the Department's list of taxpayers if it desired to verify further its estimated tax receipts. Ill. Rev. Stat. 1979, ch. 120, par. 450.

The entire matter was summed up by the supreme court of Wisconsin in *State ex rel. Worcester v. Johnson* (1899), 105 Wis. 111, 80 N.W. 1105, which was a case dealing with an error in the distribution of tax funds. The court said:

> "As between public corporations and officers, title and ownership to such a fund can be neither gained nor lost by its transfer through mistake from one treasury to another, its identity being always defined and recognized [citation] and the corporation to which it belongs can always recover it from that unlawfully or by mistake

receiving and retaining it." 105 Wis. 111, 114, 80 N.W. 1105, 1106. ■■ We conclude that the Department had the statutory power to make a correction in distribution, that no public policy is offended thereby and that any reliance placed on the receipt of the funds by the City was unwarranted.

The City's second issue concerns limitations. As has been noted, the audit which revealed the error covered a period of five years. It is the same period over which the Department proposes to make its adjustment. The City argues, without conceding that the power to adjust exists, that such a period is too long and suggests by analogy the three-year period contained in section 4 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 443), or the two-year period contained in the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 8—101). We find neither of these, nor any other, to be applicable.

In *Department of Revenue v. Prestige Casualty Co.* (1979), 68 Ill. App. 3d 988, 386 N.E.2d 356, the Department brought actions to recover on bonds provided as security for payment of Retailers' Occupation Tax. The appellate court found that the limitation periods set forth in the Act applied only to the specific subject matter at issue and found nothing to limit actions against sureties. The same essential argument, albeit somewhat stronger, of analogy was made in *Prestige Casualty* and rejected. In that case it was argued that the limitation for the taxpayer should be the same for the surety.

■■ We believe that *Prestige Casualty* is sound law and governs this case. A recent pamphlet published by the Illinois State Bar Association (Guide to Illinois Statutes of Limitations (1980)) lists almost 300 different statutes, or statutes applying to different situations. The very existence of such a plethora of laws indicates that each one is directed at a specific situation or subject matter. To allow a litigant to pick and choose among them without reference to subject matter would be to create chaos. Since there is no specific limitation contained in section 39b32 (Ill. Rev. Stat. 1979, ch. 127, par. 39b32), no period of time for correction in distribution exists and the Department is free to go back as far as its records will support its actions.

The City makes a subsidiary argument of laches. It does not apply since laches is an equitable defense and generally does not apply to the State. (*Prestige Casualty.*) The instant case concerns only statutory law, although it comes cloaked in an equitable garment, and the party asserting laches is the plaintiff. *Hickey* did allow the defense but only because of the positive acts of State officials over a period of 50 years. The supreme court held that mere inaction by them would not have been sufficient. If any analogy exists to the instant case, it would be inaction by

the Department. The City has cited a number of cases from other jurisdictions concerning laches and estoppel, but we find none of them persuasive in view of *Hickey* and *Prestige Casualty*.

The third issue raised is that of the necessity of rules to implement section 39b32. The City discerns this in section 39b19 of the Civil Administrative Code (Ill. Rev. Stat. 1979, ch. 127, par. 39b19) which provides as follows:

> "To make such reasonable rules and regulations as may be necessary to effectively enforce any of the powers herein granted."

■■ We do not view the section as mandating the issuance of rules. Rules are to be made "as may be necessary." This language is permissive. If the legislature intended that rules be mandatory, it could have so provided as it has in the past. Former section 39b44 (repealed by Pub. Act 76-1158, eff. Jan. 2, 1970, and transferred to section 68.3(11) (Ill. Rev. Stat. 1979, ch. 127, par. 63b14.3(11))), provided that the Department "shall" issue rules. Current statutes contain similar language. Section 2 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 441) provides in part: "* * * Whenever such informal rulings, opinions, or letters contain any policy of general applicability, the Department shall formulate and adopt such policy as a rule in accordance with the provisions of the Illinois Administrative Procedure Act."

Furthermore, what is at issue in the instant case is a plain error of facts which are not in dispute. The City has not advised us, nor are we able to see, how any rule would be of assistance in such a state of facts.

The final question to be settled is the City's complaint that it did not have a hearing in administrative review (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*). This necessarily assumes an administrative hearing, since there could be no review by the circuit court unless there had been a prior hearing before an administrative agency.

We find no necessity for an administrative hearing on the facts presented. An administrative tribunal is principally a finder of fact. (*Fleming v. Illinois Commerce Com.* (1944), 388 Ill. 138, 57 N.E.2d 384; *Illinois Central R.R. Co. v. Illinois Commerce Com.* (1948), 399 Ill. 67, 77 N.E.2d 180.) As we have noted several times already, no essential facts were in dispute in this case. We do not see what benefit there would have been to the trial court in receiving an administrative record.

All parties obviously regarded this case as a question of law only, and they received a full hearing on it by way of declaratory judgment.

For all the foregoing reasons the order of the circuit court of Champaign County is affirmed.

Affirmed.

MILLS, P. J., and GREEN, J., concur.