# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*City of Kankakee v. Department of Revenue*, 2013 IL App (3d) 120599

---

| | |
|---|---|
| Appellate Court Caption | THE CITY OF KANKAKEE, an Illinois Municipal Corporation, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0599 |
| Filed | April 15, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff city was properly granted a preliminary injunction to prevent the Department of Revenue from adjusting sales tax revenues arising from an erroneous distribution of sales tax revenues to plaintiff that should have gone to another municipality, since the trial court had jurisdiction to hear plaintiff's complaint and plaintiff established that it would be injured if the Department was allowed to recoup the misdirected funds. |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 11-MR-495; the Hon. Adrienne W. Albrecht, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Brian F. Barov (argued) and Eric Truett, Assistant Attorneys General, of counsel), for appellant. |
| | |
| | L. Patrick Power (argued), Assistant City Attorney, and Christopher W. Bohlen, of Barmann, Bohlen & Jacobi, P.C., both of Kankakee, for appellee. |

| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion. |
| | Justice Holdridge concurred in the judgment and opinion. |
| | Justice McDade dissented, with opinion. |

**OPINION**

¶ 1     Plaintiff City of Kankakee filed a complaint seeking review of a tax revenue adjustment made against it by defendant Illinois Department of Revenue and to enjoin the Department from adjusting the tax revenues. The trial court granted a preliminary injunction in favor of Kankakee that prevented the tax adjustment. The Department brought this interlocutory appeal. We affirm.

¶ 2                                    FACTS

¶ 3     In November 2011, defendant the Illinois Department of Revenue (the Department) issued a "Long Term Distribution Adjustment" letter to plaintiff City of Kankakee, asserting that the Department had erroneously disbursed $540,811 in sales tax revenues to Kankakee that should have been reported to Glendale Heights. The letter informed Kankakee that it would recoup the erroneous distribution from Kankakee over an eight-month period and set the repayment amounts the Department would deduct from monthly sales tax distributions to Kankakee beginning in December 2011. The letter further stated that it could not disclose any additional information pursuant to the confidentiality provisions in the Retailers' Occupation Tax Act (ROTA) (35 ILCS 120/11 (West 2010)) under which the revenues in question were collected.

¶ 4     In December 2011, Kankakee filed a six-count complaint seeking administrative review of the Department's adjustment of tax revenues, a writ of prohibition, and the issuance of preliminary and permanent injunctions to halt the adjustment. Kankakee asserted the trial court had jurisdiction under the Administrative Review Law (Review Act) (735 ILCS 5/3-101 *et seq.* (West 2010)) and alleged, in part, that the adjustment letter was a final administrative decision amenable to administrative review and that any recoupment by the Department was barred by the six-month limitations period in section 6z-18 of the State

-2-

Finance Act (30 ILCS 105/6z-18 (West 2010)) and section 8-11-16 of the Illinois Municipal Code (65 ILCS 5/8-11-16 (West 2010)). The complaint also challenged the Department's determination that the sales were located in Glendale Heights and not in Kankakee. Attached to Kankakee's complaint was the affidavit of its mayor, in which she attested that if the Department's adjustments were made as per the adjustment schedule, Kankakee "will be forced to severely cut essential City services, including Police, Fire, Public Utilities and Health, Life, Safety regulations"; Kankakee "will be unable to replace this income from any other source," and "the cut in services referred to above will severely impact the safety and welfare" of Kankakee's citizens and will "create an imminently dangerous condition in the City."

¶ 5    Kankakee also filed a motion for a preliminary injunction and a temporary restraining order (TRO) to enjoin the Department from enforcing the adjustment schedule. The Department filed a response in opposition to Kankakee's motion. It argued that Kankakee would be unjustly enriched were the injunction to issue because Kankakee was not entitled to the tax revenues the Department was attempting to recoup. It explained that the adjustment it sought from Kankakee differed from a misallocation, that Kankakee had no right to contest the adjustment, and that Kankakee could not establish its right to a preliminary injunction. The Department attached to its response an affidavit of Brenda Towers, the manager of its local tax allocation division who conducted the audit that resulted in the distribution adjustment letter. She attested to the following. Her division makes monthly adjustments to tax revenue allocations made to municipalities, counties, and other local governmental units. The adjustments are either "corrections of prior misallocations between units of local government" or "recoupment of taxes based on tax returns adjusted in the course" of a Department audit or by a taxpayer's refund claim or amended return. Misallocations are corrected through the "Taxpayer Location Verification" (TLV) process pursuant to section 8-11-16 of the Illinois Municipal Code (65 ILCS 5/8-11-16 (West 2010)). Under the TLV process, the Department annually sends out a list of the names and addresses of all ROTA-registered retailers engaged in business in the municipality. The Department sends monthly updates indicating additions and deletions. The Department corrects any misallocations for a six-month period prior to discovery of the error. For adjustments made through the audit process or by submission of an amended return by the taxpayer, the allocations will be corrected for "all periods covered by the amended return." Large adjustments may be prorated for repayment. The adjustment for Kankakee resulted from a finalized audit agreed to by the Department and the taxpayer. Towers further averred that the offsets were calculated as $180,536 as a refund or credit to the taxpayer based on a refund claim; $211,066 from the taxpayer "correcting or changing, from Kankakee to Glendale Heights, the location from which the sales were made," and $149,208 from ROTA taxes reported to Kankakee but that were out-of-state sales subject to the Use Tax (35 ILCS 105/1 *et seq.* (West 2010)). Because the tax revenues have been redistributed according to the Department's readjustments, the State would be required to "cover the amount that was previously distributed to Kankakee," and Kankakee would be "enriched with sales taxes revenues for sales that did not occur in Kankakee."

¶ 6    Kankakee replied to the Department's response and submitted an affidavit from its

attorney, Patrick Power, in which he attested that he had a November 16, 2011, telephone conversation with Towers, who stated the tax claim was for the 2003 through 2005 tax periods and that the retail taxpayer had signed a waiver allowing Towers to discuss the audit with Kankakee and its agents.

¶ 7        A hearing ensued on Kankakee's motion for a preliminary injunction. Kankakee argued that the trial court had jurisdiction under the Review Act (735 ILCS 5/3-101 *et seq.* (West 2010)). It also argued, in part, that the Department's adjustment was time-barred based on the six-month limitations period per section 6z-18 of the State Finance Act (30 ILCS 105/6z-18 (West 2010)). The Department maintained that Kankakee had no right to administrative review, and alternatively, that the six-month limitations period did not apply. Following the hearing, the trial court found that the proposed tax adjustment was subject to administrative review, citing the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2010) (see 35 ILCS 120/11a (West 2010))), and if administrative review did not apply, jurisdiction was proper under the court's original jurisdiction. The trial court also found that Kankakee established a reasonable likelihood of success on the merits of its substantive claim, noting that the Towers affidavit contradicted the adjustment letter, the Power affidavit demonstrated a likelihood that the Department's claim was time–barred under the statutory limitations period, and the affidavit of Kankakee's mayor established Kankakee would suffer irreparable harm if the injunction did not issue. Regarding the statute of limitations, the trial court reasoned that a limitations period was imposed on the Department through statutory amendment, which legislatively overruled *City of Champaign v. Department of Revenue*, 89 Ill. App. 3d 1066 (1980). The trial court preliminarily enjoined the Department from enforcing the adjustment pending further court order.

¶ 8        The Department filed a motion to dissolve or modify the preliminary injunction, arguing that the injunction was improperly issued, that Kankakee's complaint was barred by sovereign immunity, and in the alternative, that Kankakee was entitled to only contest the $211,066 of the adjustment based on sales that should have been reported to Glendale Heights and that the other amounts were not taxable transactions to which Kankakee would have been entitled to any sales tax revenues. The Department's motion was heard and denied. It followed with this interlocutory appeal.

¶ 9                                ANALYSIS

¶ 10        The issues on appeal are whether the trial court erred in granting Kankakee's request for a preliminary injunction and in denying the Department's request to modify it. Before considering the merits of the appeal, we must determine the Department's challenge to the trial court's subject matter jurisdiction. The Department argues that the trial court lacked jurisdiction under both the Review Act (735 ILCS 5/3-101 *et seq.* (West 2010)) and the trial court's original jurisdiction.

¶ 11        Subject matter jurisdiction concerns the authority of the court " 'to hear and determine cases of the general class to which the proceeding in question belongs.' " (Internal quotation marks omitted.) *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 27 (quoting *In re M.W.*, 232 Ill. 2d 408, 415 (2009)). Trial courts have original jurisdiction

of all justiciable matters except those exclusively within the jurisdiction of the Illinois Supreme Court and may review administrative actions "as provided by law." Ill. Const. 1970, art. VI, § 9. Trial courts may be divested of their original jurisdiction by the legislature where it places original jurisdiction in an administrative agency. *Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284, 287 (1994). A statute that divests the trial court of original jurisdiction must do so explicitly. *Skilling*, 163 Ill. 2d at 287. Where a statute creating or empowering an administrative agency expressly adopts the Review Act, it governs review of final administrative decisions. 735 ILCS 5/3-102 (West 2010); *Fontana v. Highwood Police Pension Board*, 296 Ill. App. 3d 899, 901 (1998). We review questions of jurisdiction *de novo*. *Crossroads Ford Truck Sales, Inc.* 2011 IL 111611, ¶ 26.

¶ 12 We must answer the jurisdictional question in the context of the relevant provisions of the applicable statutes. The Department collects the tax revenues at issue per its authority under the State Finance Act (Finance Act) (30 ILCS 105/1 *et seq.* (West 2010)) and corrects distribution errors as authorized under the Department of Revenue Law (20 ILCS 2505/2505-1 *et seq.* (West 2010)). The tax it claims to have erroneously distributed to Kankakee was collected as a retailers' occupation tax under the ROTA (35 ILCS 120/1 *et seq.* (West 2010)). As directed under the Finance Act, the Department distributes a portion of the ROTA revenues to the municipalities and counties in which the sales occurred. 30 ILCS 105/6z-18 (West 2010). Under the Department of Revenue Law, the Department may correct any errors in distribution between municipalities and counties and where state taxes are incorrectly credited as municipal or county taxes. 20 ILCS 2505/2505-475 (West 2010).

¶ 13 The trial court determined that administrative review was proper because the Illinois Administrative Procedure Act applies to all rules and procedures of the Department under the ROTA. The Administrative Procedure Act establishes procedures for agency rulemaking and administrative hearings but it does not adopt the Review Act. Moreover, although section 12 of the ROTA adopts the Review Act for review of final administrative decisions, the Department's authority to distribute and adjust tax revenues is conferred under the Finance Act and the Revenue Law. Neither of the applicable provisions of the Finance Act or the Revenue Law adopts the Review Act. See 30 ILCS 105/6z-18 (West 2010); 20 ILCS 2505/2505-475 (West 2010). Accordingly, Kankakee was not entitled to administrative review and the trial court lacked special statutory jurisdiction.

¶ 14 Nevertheless, we find that the trial court retained original jurisdiction to review Kankakee's complaint under common law *certiorari*. Where there is no judicial review under the Review Act, a petition for a writ of *certiorari* is the proper procedure for review by the trial court. *Philger, Inc. v. Department of Revenue*, 208 Ill. App. 3d 1066, 1069 (1991). Writs of *certiorari* may be issued by a trial court to "inferior tribunals whenever it can be shown that they have either exceeded their jurisdiction or have proceeded illegally and no direct appeal or other method of direct review of their proceedings is provided." *Philger, Inc.*, 208 Ill. App. 3d at 1071. Where a complaint asserts the trial court's jurisdiction is under the Review Act, the complaint is sufficient to authorize common law *certiorari* review even when the Review Act is later determined not to apply. *Philger, Inc.*, 208 Ill. App. 3d at 1069-70. The adjustment letter Kankakee received from the Department offered no means for Kankakee to challenge or contest the redistribution. Because Kankakee had no recourse

under the Review Act, we conclude that a writ of *certiorari* is a proper vehicle to obtain review of the Department's calculations regarding the adjustment.

¶ 15        We also determine that the trial court should issue a writ of prohibition. "For a writ of prohibition to be issued, the action to be prohibited must be judicial or quasi-judicial in nature; the jurisdiction of the tribunal against which the writ is sought must be inferior to that of the issuing court; the action to be prohibited must be either outside the tribunal's jurisdiction or, if within its jurisdiction, beyond its legitimate authority; and the petitioner must be without any other adequate remedy." *Orenic v. Illinois State Labor Relations Board*, 127 Ill. 2d 453, 468 (1989). As stated above, the Department's letter provided no information regarding the tax revenue in question except that it had been improperly reported. The letter further informed Kankakee that it could not disclose additional information regarding the taxpayer pursuant to ROTA's confidentiality provision (35 ILCS 120/11 (West 2010)), which prohibits the Department from disclosing taxpayer information except under enumerated circumstances or in accordance with a proper judicial order. We do not construe ROTA's confidentiality provision as prohibiting disclosure in the circumstances at bar. Rather, because the provision allows the trial court to order the Department to release confidential information, it follows that the trial court itself has the authority to review the records. 35 ILCS 120/11 (West 2010). We also consider the Department's adjustment based on its interpretation of the ROTA and Use Tax Act (UTA) (35 ILCS 105/1 *et seq.* (West 2010)) to be a quasi-judicial action. *People ex rel. No. 3 J. & E. Discount, Inc. v. Whitler*, 81 Ill. 2d 473, 480 (1980) (the actions of the director of the Department of Revenue, as an administrative official, may be sufficiently judicial in nature to be subject to a writ of prohibition). As discussed above, the Department's jurisdiction is inferior to that of the trial court. *Skilling*, 163 Ill. 2d at 287 ("The courts of Illinois have original jurisdiction over all justiciable matters."). Additionally, Kankakee alleges the Department's refusal to divulge the taxpayer information is not supported by its statutory authority and that Kankakee has no other means to discover the tax information. The Department's position supports Kankakee's claim as it contends that because the adjustment resulted from a finalized taxpayer audit, Kankakee cannot challenge the adjustment.

¶ 16        Having determined that the trial court was vested with subject matter jurisdiction and that Kankakee is entitled to a writ of prohibition regarding disclosure of the retailer-taxpayer's information, we now address the substantive argument on appeal. The Department argues that Kankakee is not entitled to the issuance of a preliminary injunction because it had no right to administrative review of the Department's adjustment determination, Kankakee's claim is barred by sovereign immunity, and the six-month limitations period found applicable by the trial court does not apply to the type of adjustment at issue.

¶ 17        A preliminary injunction is an extraordinary remedy applicable in "extreme emergency" situations where serious harm would result without it. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 156 (1992). The purpose of a preliminary injunction is to preserve the status quo pending determination on the merits of the case. *Hartlein*, 151 Ill. 2d at 156. A preliminary injunction may be granted when the movant establishes: (1) a clear, ascertainable right in need of protection; (2) that it will suffer irreparable harm if the injunction does not issue; (3) no adequate remedy at law; and (4) the likelihood of success on the merits. *Clinton Landfill,*

*Inc. v. Mahomet Valley Water Authority*, 406 Ill. App. 3d 374, 378 (2010). At the preliminary injunction stage of the proceedings, the trial court does not decide controverted facts on the merits. *Clinton Landfill, Inc.*, 406 Ill. App. 3d at 378 (quoting *Hartlein*, 151 Ill. 2d at 156). We review the trial court's grant of a preliminary injunction for an abuse of discretion. *Clinton Landfill, Inc.*, 406 Ill. App. 3d at 378.

¶ 18                    A. Clear, Ascertainable Right in Need of Protection

¶ 19        The Department contends that because Kankakee cannot satisfy this element necessary for a preliminary injunction, Kankakee is not entitled to review of the Department's redistribution determination. As discussed above, we consider the trial court had jurisdiction to hear Kankakee's complaint under its grant of original jurisdiction. The Department also contends that Kankakee cannot assert an ascertainable right in need of protection because its claims against the Department are barred by sovereign immunity. According to the Department, if Kankakee was successful in permanently enjoining the Department from recouping the taxes distributed to Kankakee, it would have to use nonappropriated funds because it has already paid the same tax revenues to Glendale Heights and refunded a portion of them to the taxpayer. Thus, the Department contends, Kankakee's action constitutes a monetary claim against the State and cannot stand.

¶ 20        Sovereign immunity prohibits claims against a department of the State when "a 'judgment for the plaintiff could operate to control the actions of the State or subject it to liability.' " *Meyer v. Department of Public Aid*, 392 Ill. App. 3d 31, 34-35 (2009) (quoting *Currie v. Lao*, 148 Ill. 2d 151, 158 (1992)). Sovereign immunity protects the state from interference with the performance of its governmental functions and preserves and protects state funds. *City of Carbondale v. Bower*, 332 Ill. App. 3d 928, 933 (2002). A claim seeking a monetary judgment against a department that is payable out of state funds must be brought in the Court of Claims; the trial court is without jurisdiction to hear the claim. *Meyer*, 392 Ill. App. 3d at 34-35. However, actions that seek to enjoin public officials from engaging in conduct that violates statutes or exceeds their lawful authority are not barred by sovereign immunity. *American Federation of State, County & Municipal Employees, Council 31 v. Ryan*, 347 Ill. App. 3d 732, 745 (2004). Where the issue to be determined is whether a state agency has refused to disburse appropriated funds according to law and the party requesting relief seeks an injunction that the funds be properly disbursed, the action is not considered to be against the State. *City of Springfield v. Allphin*, 74 Ill. 2d 117, 124 (1978). Where a party is seeking court review of a State agency's determination, " 'which, itself, has the force of a judicial determination,' " the action is not against the State. *Allphin*, 74 Ill. 2d at 125 (quoting *Moline Tool Co. v. Department of Revenue*, 410 Ill. 35, 38 (1951)).

¶ 21        We do not agree with the Department's argument that Kankakee's complaint was barred by sovereign immunity and that the Court of Claims is the proper venue for Kankakee to pursue its claim. The relief requested by Kankakee, a preliminary injunction, could not operate to control the actions of the State or subject it to liability. At issue is whether the Department improperly allocated the tax disbursement according to the applicable sales tax statutes. 35 ILCS 105/1 *et seq.* (West 2010) (UTA); 35 ILCS 120/1 *et seq.* (West 2010)

(ROTA). Both the tax statutes require the Department to pay certain tax revenues, including those at issue here, into a special fund, the Local Government Tax Fund. Monies in that fund are segregated from the State's general revenue funds and all adjustment payments are made out of the special fund. In challenging the Department's adjustment, Kankakee is seeking a verification of the Department's distribution determination and requesting that the funds be distributed according to the applicable statutory requirements. Kankakee is not attempting to enjoin the Department from correcting "an *alleged* erroneous tax disbursement" (emphasis in original) or seeking to direct the actions of the Department. In its request for injunctive relief, Kankakee is not seeking reimbursement or disbursal of any funds. Kankakee is objecting to the Department's conclusory determination and refusal to provide any information or details regarding the adjustment. Kankakee's challenge is "in essence, a review of the legality" of the Department's adjustment determination. *Allphin*, 74 Ill. 2d at 126. At this stage in the proceedings, Kankakee is merely attempting to maintain the status quo pending a verification of the Department's calculations. The trial court properly determined that Kankakee has demonstrated an ascertainable right in need of protection.

¶ 22          B. That It Will Suffer Irreparable Harm if the Injunction Does Not Issue

¶ 23     As found by the trial court, Kankakee satisfied this element with the affidavit of the mayor of Kankakee. The mayor attested that Kankakee would experience substantial financial difficulties were it required to return the allegedly wrongly distributed tax revenue. The financial straits, in turn, would cause Kankakee to cut essential services, including police and fire protection, and affect the safety and welfare of Kankakee's citizens. Moreover, because the tax periods at issue involve sales revenues from 2003 through 2005, Kankakee cannot balance those budgets to account for the adjustment.

¶ 24                         C. No Adequate Remedy at Law

¶ 25     Similarly, the affidavit of Kankakee's mayor also demonstrates that Kankakee is without adequate remedy at law were the preliminary injunction not to issue. If the Department was allowed to recoup the allegedly misappropriated tax revenues from prior years, Kankakee would suffer financial hardship and be unable to retroactively balance its budget for the prior tax periods in question. If the State were allowed to re-allocate the monies prior to the trial court's ruling on the merits, Kankakee would be left with a shortfall in its funds and would suffer consequences detrimental to its citizens. *Seyller v. County of Kane*, 408 Ill. App. 3d 982, 990-91 (2011) (acknowledging no adequate remedy at law where lack of tax funding would cause county clerk's office to close).

¶ 26                        D. The Likelihood of Success on the Merits

¶ 27     The Department bases its argument that the trial court's issuance of the preliminary injunction was in error on its contention Kankakee did not demonstrate a likelihood of success on the merits. It challenges the trial court's findings that the discrepancies between the Department's adjustment letter and the affidavit of Towers, and the six-month limitations period based on taxpayer location errors evidenced Kankakee's likelihood of success on the

merits. According to the Department, Kankakee had no likelihood of success on the merits and its request for a preliminary injunction should have been denied.

¶ 28     To satisfy this element, Kankakee needs only to " 'raise a fair question regarding the existence of a claimed right and a fair question that [it] will be entitled' " to the requested relief. *Seyller*, 408 Ill. App. 3d at 991 (quoting *Kalbfleisch v. Columbia Community Unit School District No. 4*, 396 Ill. App. 3d 1105, 1114 (2009)). Here, the Towers affidavit broke down the tax amount into specifics, allocating $180,536 as a taxpayer refund, $211,066 based on location that should have been reported as Glendale Heights, and $149,208 due to the taxpayer based on a reclassification of sales. On its face, the affidavit conflicts with the distribution letter that allots the entire amount of the adjustment to Glendale Heights. Kankakee has raised a fair question regarding the amount, if any, that should be reallocated to Glendale Heights and/or the audited taxpayer and what amount of those disbursements it must contribute.

¶ 29     Kankakee also raises a fair question of whether the Department is barred under the six-month statute of limitations for reallocation based on errors in determining taxpayer location. Misallocations or errors in distribution of the taxes paid into the Local Government Tax Fund may be corrected based on taxpayer location when certifying the municipality's monthly disbursement amount and are limited to a six-month offset period. 30 ILCS 105/6z-18 (West 2010). Errors corrected as the result of a Department audit, however, are not limited as to the correction period. *City of Champaign v. Department of Revenue*, 89 Ill. App. 3d 1066, 1071 (1980). The trial court determined that *Champaign*, which states that there is no limitations bar for corrections made under section 2505-475 (see 20 ILCS 2505/2505-475 (West 2010)), has been legislatively overruled, and the six-month limitations period applies. *Champaign*, 89 Ill. App. 3d at 1071 (finding that "no period of time for correction in distribution exists and the Department is free to go back as far as its records will support its actions"). This finding by the trial court is beyond the question raised on a motion for a preliminary injunction. *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 382 (1985) (party seeking preliminary injunction is not required to prove its right to relief on the merits). Because Kankakee has raised a fair question whether the six-month limitation period bars the Department from redistributing the tax revenues, it satisfied this element necessary for a preliminary injunction to issue.

¶ 30     We find that Kankakee has demonstrated the elements necessary for a preliminary injunction to issue. Accordingly, we hold that the trial court properly granted its motion for injunction relief.

¶ 31     Lastly, we must determine whether the trial court erred in denying the Department's request to modify the preliminary injunction. The Department argues that the trial court should have granted its motion to modify the injunction to cover only the amount of offset based on the change in location of the retailer to Glendale Heights. It bases its argument on a claim that Kankakee has standing to challenge only the reallocation of tax revenues to Glendale Heights and not the refunds made to the taxpayer.

¶ 32     A trial court may modify a preliminary injunction during the pendency of a case. *Patrick Media Group, Inc. v. City of Chicago*, 252 Ill. App. 3d 942, 946 (1993). Because a

preliminary injunction is a provisional remedy entered to maintain the status quo, the trial court may modify it at any time prior to its dissolution. *Kraft v. Solon*, 32 Ill. App. 3d 557, 561 (1975). We review the trial court's denial of a motion to modify an injunction for an abuse of discretion. *People ex rel. Fahner v. Community Hospital of Evanston*, 108 Ill. App. 3d 1051, 1060 (1982).

¶ 33    The Department seeks to modify the injunction to cover only the amount of offset based on the change in location of the retailer to Glendale Heights. It bases its argument on a claim that Kankakee has standing to challenge only the reallocation of tax revenues to Glendale Heights and not to the taxpayer. We reject its standing argument. As discussed above, the Department's letter stated that it was seeking to redistribute $540,811 in tax revenues it claims were properly owed to Glendale Heights and distributed to Kankakee in error and set forth a repayment plan based on the total amount it claimed was distributed in error. The Department now argues that the only amount at issue is $211,066, which constitutes the amount distributed based on an incorrect retail taxpayer location. The Department contends the sales tax revenues belong to Glendale Heights and Kankakee challenges that contention. We find it has standing to do so. *Helmig v. John F. Kennedy Community Consolidated School District No. 129*, 241 Ill. App. 3d 653, 658 (1993) ("a plaintiff has standing if he is able to show some injury in fact to a legally recognized interest"). Kankakee has put forth facts establishing that it will be injured were its sales tax revenues incorrectly adjusted and recouped by the Department. Moreover, until the Department's calculations are verified, there is no adequate basis to modify the injunction to include only the amount the Department maintains was credited to Glendale Heights. Accordingly, we find that the trial court did not err in rejecting the Department's request to modify the preliminary injunction.

¶ 34    Based on the above reasons, we find that the trial court has jurisdiction to hear Kankakee's complaint and affirm the trial court's issuance of a preliminary injunction and denial of the Department's motion to modify the preliminary injunction.

¶ 35    For the foregoing reasons, the judgment of the trial court of Kankakee County is affirmed.

¶ 36    Affirmed.

¶ 37    JUSTICE McDADE, dissenting.

¶ 38    Unlike the majority, I do not believe the circuit court had original jurisdiction to consider Kankakee's complaint for a permanent injunction. I therefore respectfully dissent.

¶ 39    I agree with the majority's holding that the circuit court lacked special statutory jurisdiction under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2010)). *Supra* ¶ 13. I disagree, however, with its finding that the court retained original jurisdiction under common law writs of *certiorari* and prohibition. *Supra* ¶¶ 14-15. While I acknowledge the principle that where there is no judicial review under the Administrative Review Law, a petition for a writ of *certiorari* is the proper procedure for review by the trial court (*supra* ¶ 14), I believe a writ of *certiorari* or prohibition is improper due to the fact that Kankakee's complaint is barred pursuant to the doctrine of sovereign immunity.

¶ 40    I begin my analysis by determining what statutory authority the Department was operating under in seeking the adjustment, as my determination regarding original jurisdiction/sovereign immunity turns on these facts.

¶ 41                          Department's Authority

¶ 42    The source of the Department's authority to distribute a portion of the sales tax revenues to municipalities is found in the State Finance Act (Finance Act) (30 ILCS 105/1 *et seq.* (West 2010)). The source of the Department's authority to correct tax distribution errors is found in the Department of Revenue Law (Revenue Law) (20 ILCS 2505/2505-475 *et seq.* (West 2010)).

¶ 43    Section 6z-18 of the Finance Act provides that a portion of the money through various sales taxes shall be distributed by the Department to municipalities and counties in which the sales occurred. 30 ILCS 105/6z-18 (West 2010).

¶ 44    Section 2505-475 of the Revenue Law grants the Department the authority to correct (1) "errors in the distribution" of sales taxes "between municipalities and counties," and (2) "errors by which State taxes are erroneously credited as municipal or county tax or by which municipal or county taxes are erroneously credited." 20 ILCS 2505/2505-475 (West 2010).

¶ 45    Having set out the appropriate authority under which the Department was acting, I now turn to the question of whether the circuit court had original jurisdiction over the City's complaint.

¶ 46                          Original Jurisdiction

¶ 47    The circuit court held that even absent jurisdiction under the Administrative Review Law, "the decision of the Department is clearly subject to judicial review based on the Circuit Court's original jurisdiction." In agreeing, the majority rejects the Department's argument that the circuit court lacked original jurisdiction to enter the preliminary injunction against it. *Supra* ¶¶ 14-15. In my opinion, both the circuit court and the majority are incorrect. Kankakee's complaint is barred by the doctrine of sovereign immunity.

¶ 48    In 1971, the legislature enacted the State Lawsuit Immunity Act (Pub. Act 77-1776, § 1, eff. Jan. 1, 1972), which provides, "the State of Illinois shall not be made a defendant or party in any court" except as provided in the Court of Claims Act (705 ILCS 505/1 through 29 (West 2010)) or the Illinois Public Labor Relations Act (5 ILCS 315/1 through 27 (West 2010)). 745 ILCS 5/1 (West 2010). Thus, sovereign immunity bars lawsuits against the State in state court unless the legislature has waived the immunity. *People ex rel. Manning v. Nickerson*, 184 Ill. 2d 245, 249 (1998) ("the legislature–only the legislature–can determine when and where claims against the state will be allowed"). " 'The determination of whether an action is a suit against the State, and thus one that must be brought in the Court of Claims, turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties.' " *Meyer v. Department of Public Aid*, 392 Ill. App. 3d 31, 34-35 (2009) (quoting *Walker v. Rogers*, 272 Ill. App. 3d 86, 88 (1995)). "An action is against the State when a 'judgment for the plaintiff could operate to control the actions of the State or

subject it to liability.' " *Meyer*, 392 Ill. App. 3d at 35 (quoting *Currie v. Lao*, 148 Ill. 2d 151, 158 (1992)).

¶ 49 "Sovereign immunity prohibits a court from entering a mandatory injunction directing the State to take specific action." *City of Carbondale v. Bower*, 332 Ill. App. 3d 928, 935 (2002). "Because the very purpose of sovereign immunity is to bar private litigants from 'controlling' the State's actions [citation], the same rule would apply to negative injunctions (injunctions prohibiting the State from taking a specific action)." *Hadley v. Department of Corrections*, 362 Ill. App. 3d 680, 683 (2005). But the rule has an exception:

> " 'A suit to enjoin conduct that violates the law or exceeds the authority of a public official is not barred by sovereign immunity, because it is not considered to be an action against the State. However, a suit that seeks to enjoin public officials from taking actions in a governmental matter over which they have discretionary authority *is* deemed to be an action against the State, and sovereign immunity consequently does then apply.' " (Emphasis in original.) *Hadley*, 362 Ill. App. 3d at 683 (quoting *American Federation of State, County & Municipal Employees, Council 31 v. Ryan*, 347 Ill. App. 3d 732, 745(2004)).

¶ 50 In the present case, the City seeks to enjoin the Department from correcting an *alleged* erroneous tax disbursement. The legislature has expressly granted the Department authority to correct tax disbursement errors. See 20 ILCS 2505/2505-475 (West 2010). Thus, the Department's action in seeking the adjustment does not "violate[] the law or exceed[] the authority" bestowed on it. The City's complaint seeking to enjoin the Department is therefore an action against the State to which sovereign immunity applies. Accordingly, the circuit court lacked original jurisdiction to enter the preliminary injunction against the Department.

¶ 51 In coming to this conclusion, I offer no opinion on whether the Department actually made an erroneous tax disbursement or, stated another way, whether the City should be allowed to keep the $540,810.99. I merely find that the circuit court is not the proper forum to determine these issues. If the City wishes to challenge the merits of the Department's actions I believe it must do so in the Court of Claims.