Docket No. 107816.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

ROLAND W. BURRIS *et al.*, Petitioners, v. JESSE WHITE, Secretary of State, Respondent.

*Opinion filed January 9, 2009.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman and Burke concurred in the judgment and opinion.

**OPINION**

The issue presented by this original action for *mandamus* is whether Jesse White, the Secretary of State of the State of Illinois, is required by section 5(1) of the Secretary of State Act (15 ILCS 305/5(1) (West 2006)) to countersign and affix the seal of the state to the document issued by Governor Rod R. Blagojevich on December 31, 2008, certifying the Governor's appointment of Roland Burris to the United States Senate. For the reasons that follow, we hold that section 5(1) of the Secretary of State Act (15 ILCS 305/5(1) (West 2006)) is inapplicable to the Burris appointment, and that no further action is required by any officer of this state to make that appointment valid. We further hold that the only ministerial act required of the Secretary of State in this case is that he register the appointment in accordance with section 5(2) of the Secretary of State Act (15 ILCS 305/5(2) (West 2006)). The Secretary of State having performed that responsibility on December 31, 2008, the writ of *mandamus* is

denied.

Background

Following the November 4, 2008, general election, a majority of the members of the Electoral College voted in favor of Barack H. Obama for the office of President of the United States. See U.S. Const., amend. XII. At the time of the general election, President-elect Obama was the junior United States Senator from Illinois. In anticipation of assuming the Presidency, President-elect Obama resigned his Senate seat, leaving that post vacant.

The seventeenth amendment to the United States Constitution provides that

> "[w]hen vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: Provided, That the legislature of any State may empower the executive thereof to make temporary appointment until the people fill the vacancies by election as the legislature may direct." U.S. Const., amend. XVII.

Pursuant to the power conferred on it by this amendment, the Illinois General Assembly empowered its executive, *i.e.*, the Governor, to make temporary appointments for the office of United States Senator. It has done so through enactment of section 25–8 of the Election Code (10 ILCS 5/25–8 (West 2006)). That statute provides that "[w]hen a vacancy shall occur in the office of United States Senator from this state, the Governor shall make temporary appointment to fill such vacancy until the next election of representatives in Congress." 10 ILCS 5/25–8 (West 2006).

In accordance with the authority conferred on him by section 25–8 (10 ILCS 5/25–8 (West 2006)), Rod R. Blagojevich, the Governor of Illinois, appointed Roland Burris to temporarily fill the United States Senate seat previously held by President-elect Obama. The Governor made that appointment by letter dated December 30, 2008. The following day, December 31, 2008, the Governor executed a document entitled "certificate of appointment," which was addressed to the President of the Senate of the United States. In that document, the Governor certified that he was appointing Mr. Burris to represent Illinois in the United States Senate until the vacancy caused by

-2-

President-elect Obama's resignation "is filled by election as provided by law." The certificate was on a preprinted form and included, below the Governor's signature, a space for the signature of "Jesse White, Secretary of State." The space for the Secretary of State's signature was left blank.

The form used by the Governor was apparently based on "recommended forms" contained in Rule II of the Standing Rules of the United States Senate. As their name indicates, these forms are merely recommended. State officials are not required to adopt them, but "they may use [them] if they see fit." Standing Rule II, United States Senate, Committee on Rule & Administration.

The Illinois Constitution sets forth the Secretary of State's duties. It provides that

> "The Secretary of State shall maintain the official records of the acts of the General Assembly and such official records of the Executive Branch as provided by law. Such official records shall be available for inspection by the public. He shall keep the Great Seal of the State of Illinois and perform other duties that may be prescribed by law." Ill. Const. 1970, art. V, §16.

Consistent with this provision, the General Assembly provided, by law, that

> "[i]t shall be the duty of the Secretary of State:
>
> 1. To countersign and affix the seal of state to all commissions required by law to be issued by the Governor.
>
> 2. To make a register of all appointments by the Governor, specifying the person appointed, the office conferred, the date of the appointment, the date when bond or oath is taken and the date filed. If [State] Senate confirmation is required, the date of the confirmation shall be included in the register." 15 ILCS 305/5 (West 2006).

These duties are set forth in section 5 of the Secretary of State Act (15 ILCS 305/5 (West 2006)). Section 5 includes additional provisions, but none pertain to the present discussion.

On December 31, 2008, the same day the certificate of appointment was signed by the Governor, the appointment was duly registered by the Secretary of State's office pursuant to section 5(2)

-3-

of the Secretary of State Act (15 ILCS 35/5(2) (West 2006)). That same day, the Secretary of State's senior legal advisor sent a letter to Mr. Burris' attorneys confirming that the appointment had been registered. The letter directly tracked the language used in section 5(2) and specifically cited to that provision. There is no dispute that the Secretary of State did not also sign and affix the state seal to the Governor's certificate of appointment or his appointment letter dated December 30, 2008.

On January 2, 2009, Mr. Burris, joined by two registered voters (hereinafter Petitioners), filed a motion pursuant to Supreme Court Rule 381(a) (188 Ill. 2d R. 381(a)) seeking leave to file a complaint for *mandamus* in our court. The motion invoked our original jurisdiction under article VI, section 4(a), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, §4(a)) and sought an order compelling the Secretary of State to countersign and affix the seal of the state to his appointment papers under section 5(1) of the Secretary of State Act (15 ILCS 305/5(1) (West 2006)). In a separate motion to "accelerate consideration of their motion for leave to file a complaint for writ of mandamus and to accelerate consideration of [their] complaint for writ of mandamus," Mr. Burris and the other two Petitioners alleged that prompt resolution of the matter is required because without the Secretary of State's signature and the seal of the State, his appointment would not be recognized by the United States Senate, and the people of the State of Illinois would not be fully represented in the Senate when the new United States Congress convened on January 6, 2009.

In a supplemental memorandum which we allowed Mr. Burris to file, he advised the court that on January 5, 2009, the chief of staff to the Governor hand-delivered Mr. Burris' certificate of appointment to the secretary of the United States Senate. While the secretary retained the certificate, she declined to enter it into the Senate's certificate book. The following day, when the Senate convened, Mr. Burris appeared at the Capitol Building to be sworn in as a United States Senator. He was not permitted to do so and was barred from the Senate floor on the grounds the Secretary of State had not countersigned or affixed the state seal to Mr. Burris' appointment papers.

Pursuant to the rules of this court, the Secretary of State had until

-4-

January 7, 2009, to respond to Petitioners' motions. The Secretary of State filed a timely response, and by separate order, we granted Petitioners' request for accelerated consideration of the motion for leave to file a complaint for writ of *mandamus*. We also allowed Petitioners' request for accelerated consideration of the *mandamus* complaint itself. Because resolution of this case turns on questions of law which the parties have carefully examined and forcefully argued in the materials already submitted to us, additional argument is unnecessary. The numerous memoranda of law submitted by the parties' shall stand as their briefs, and we shall proceed to the merits without oral argument.

Analysis

*Mandamus* is an extraordinary remedy to enforce, as a matter of right, "the performance of official duties by a public officer where no exercise of discretion on his part is involved." *Noyola v. Board of Education*, 179 Ill. 2d 121, 133 (1997), quoting *Madden v. Cronson*, 114 Ill. 2d 504, 514 (1986). To be entitled to a writ of *mandamus*, a party must establish a clear right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ. *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 465 (2004). We agree with the Secretary of State that Petitioners in this case cannot satisfy that burden.

Petitioners' claim is predicated on the Secretary of State's failure to countersign and affix the state seal to the documents appointing Mr. Burris to the Senate. According to Petitioners, the Secretary owes such a duty under section 5(1) of the Secretary of State Act (15 ILCS 305/5(1) (West 2006)). Under the express terms of that statute, however, the duty to sign and affix the state seal only pertains to "commissions required by law to be issued by the governor." There are situations in Illinois law where officer holders are specifically required to obtain gubernatorial "commissions." These include county clerks (55 ILCS 5/2–2006 West 2006)), members of the boards of county commissions (55 ILCS 5/2–4001 (West 2006)), coroners (55 ILCS 5/3–3001 (West 2006)), sheriffs (55 ILCS 5/3–6001 (West 2006)), clerks of the courts (705 ILCS 105/3 (West 2006)), and commissioned officers in the Illinois State Guard (20 ILCS 1805/37 (West 2006)). No provision of Illinois law, however, requires a

commission to be issued by the Governor in case of appointments to fill vacancies to the United States Senate.

The relationship between "commissions" and the Governor's appointment powers was considered in an Attorney General opinion issued in 1978 at then Governor Thompson's request. The opinion states:

> "To constitute an appointment to office, there must be some open, unequivocal act of appointment on the part of the appointing authority empowered to make it. (*Molnar v. City of Aurora* (1976), 38 Ill. App. 3d 580, 583; 63 Am. Jur. 2d *Public Officers and Employees* §99.) An appointment to office is made and is complete when the last act required of the appointing authority vested with the appointing power has been performed. *People v. Lower* (1911), 251 Ill. 527, 529.
>
> ***
>
> While the appointment of an officer is usually evidenced by a commission, it is not essential to the validity of the appointment that a commission be issued to the officer. (*Fekete v. City of East St. Louis* (1924), 315 Ill. 58, 60.) The commission is not the appointment; it is merely the written evidence of the appointment. (63 Am. Jur. 2d *Public Officers and Employees* §114.) Where the issuance of a commission is not made by law a necessary part of the appointment, the appointment is complete when the appointing officer makes his choice. 67 C.J.S. *Officers* §36." 1978 Ill. Att'y Gen. Op. 138, 139.

While Attorney General opinions are not binding on the courts, a well-reasoned opinion of the Attorney General is entitled to considerable weight, especially in a matter of first impression in Illinois. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 399 (1994). We think this opinion, grounded as it is on precedent from our own court, is entitled to such weight and accurately characterizes Illinois law.

Because gubernatorial appointments only require issuance of an actual commission when the governing law so provides and because no provision of law makes issuance of a commission necessary for the validity of a gubernatorial appointee to a United States Senate

vacancy, no commission was required by law to effectuate the appointment of Mr. Burris to the United States Senate. And because the Secretary of State's "sign and seal" duty is triggered only in cases where commissions are required by law, it necessarily follows that the Secretary of State had no duty to sign and seal the certificate of appointment issued by the Governor in this case. Under section 5(2) of the Secretary of State Act (15 ILCS 305/5(2) (West 2006)), the Secretary of State's sole duty was to register the appointment, which he has done.

Our research has disclosed but one reported decision pertaining to refusal by the Secretary of State to countersign and affix the seal to a commission for a gubernatorial appointment. It is *People ex rel. Ewign v. Forquer*, 1 Ill. 104 (1825). That case involved the Governor's attempt to make an appointment to the post of paymaster-general in the state militia. *Mandamus* was ultimately denied for reasons unrelated to the questions before us today, and nothing in the court's decision is in any way inconsistent with the analysis we have just set forth. Although the opinion does not give a useful citation to the governing statute, the law in question was a precursor to the Military Code of Illinois (20 ILCS 1805/1 *et seq*. (West 2006)), and while the current Code no longer addresses the specific post of paymaster-general, that post would have fallen within the category of positions for which gubernatorial commissions are, in fact, required. For the reasons just explained, a United States Senate vacancy is not such a position.

The suggestion has been made that the General Assembly intended the term "commission" to be used in a more general sense to encompass any appointments by the Governor. Historical analysis of Illinois law will not support such a construction. The "sign and seal" duty contained in section 5 of the Secretary of State Act has antecedents in earlier statutes. For example, a version of the law was in effect in 1874, and it also contained a "sign and seal" duty for commissions. Significantly, however, it differed from the current law in that the registration requirement, now set forth in subsection (2) of section 5, was also directed specifically to commissions. That is no longer the case. Public Act 86–398 amended the statute in 1989. Present law clearly differentiates between "commissions" under subsection (1) of section 5 and the more general "appointments"

contained in subsection (2) of section 5. Under established rules of statutory construction, we must assume that the General Assembly made that distinction for a reason, and the reason is apparent: under present law, commissions are no longer necessary in every case to make a gubernatorial appointment valid. Where commissions are required by law, the "sign and seal" duty applies. Where, as here, no commission is required, there is only a duty to register the appointment.

As noted in the Attorney General opinion cited above, the only purpose a signature and seal could serve in this case is an evidentiary one. It would confirm that the appointment had, in fact, been made. At this point, however, there is no question at all that the Governor did, in fact, make the appointment. If there was ever any question about that on the part of the United States Senate, it should have been removed when the Governor's envoy appeared at the Senate with a copy of the certificate of appointment in hand.

In their pleadings, Petitioners suggest that the United States Senate has taken the view that the Governor's signed, hand-delivered certificate of appointment is insufficient to meet the requirements of the Senate's own internal rules. We note, however, that nothing in the published rules of the Senate, including Rule II, appears to require that Senate appointments made by state executives pursuant to the seventeenth amendment must be signed and sealed by the state's secretary of state. Moreover, no explanation has been given as to how any rule of the Senate, whether it be formal or merely a matter of tradition, could supercede the authority to fill vacancies conferred on the states by the federal constitution. Under these circumstances, the Senate's actions cannot serve as the predicate for a *mandamus* action against the Secretary of State. The only issue before us is whether the Secretary of State, an official of this state, failed to perform an act required of him by the law of Illinois. He did not.

Petitioners argue, in the alternative, that the Secretary of State had a mandatory duty under certain acts of Congress to sign and affix the seal of this state to Mr. Burris' appointment as Senator. This argument is wholly without merit. The provisions invoked by Petitioners, 2 U.S.C. sections 1a and 1b, apply, by their terms, to situations where a vacancy is filled by election. The situation here involves the filling of a vacancy through appointment.

There is one final point we feel constrained to mention. While the Secretary of State has no duty under Illinois law to sign and affix the state seal to the certificate of appointment issued by the Governor, he does have a duty under section 5(4) of the Secretary of State Act (15 ILCS 305/5(4) (West 2006))

> "to give any person requiring the same paying the lawful fees therefor, a copy of any law, act, resolution, record or paper in his office, and attach thereto his certificate, under the seal of the state."

The registration of the appointment of Mr. Burris made by the Secretary of State is a "record or paper" within the meaning of this statute. A copy of it is available from the Secretary of State to anyone who requests it. For payment of the normal fee charged by the Secretary of State in accordance with this statute, Petitioners could obtain a certified copy bearing the state's seal. Because such relief is possible, no order by this court is necessary or appropriate. See *People ex rel. Devine v. Stralka*, 226 Ill. 2d 445, 450 (2007) (for *mandamus* to issue, the petitioner must be without any other adequate remedy).

Conclusion

Because the Secretary of State had no duty under section 5(1) of the Secretary of State Act (15 ILCS 305/5(1) (West 2006)) to sign and affix the state seal to the document issued by the Governor appointing Roland Burris to the United States Senate, Petitioners are not entitled to an order from this court requiring the Secretary to perform those Acts. Under the Secretary of State Act, the Secretary's sole responsibility was to register the appointment (15 ILCS 305/5(2) (West 2006)), which he did. No further action is required by the Secretary of State or any other official to make the Governor's appointment of Roland Burris to the United States Senate valid under Illinois law. Moreover, to the extent that additional proof of the validity of the appointment is necessary, Illinois law provides a mechanism for obtaining it without the need for judicial intervention.

For the foregoing reasons, petitioners' request for issuance of a writ of *mandamus* is denied. Mandate to issue forthwith.

-9-

*Writ denied.*