# Illinois Official Reports

## Appellate Court

*Fillmore v. Taylor*, 2017 IL App (4th) 160309

| | |
|---|---|
| Appellate Court Caption | AARON FILLMORE, Plaintiff-Appellant, v. GLADYSE C. TAYLOR, Director of Corrections; LEIF M. McCARTHY, Chairperson of the Adjustment Committee; and ELDON L. COOPER, Member of the Adjustment Committee, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-16-0309 |
| Filed | July 12, 2017 |
| Rehearing denied | July 26, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 15-MR-915; the Hon. Rudolph M. Braud, Jr., Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Aaron P. Fillmore, of Sumner, appellant, *pro se*.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Kaitlyn N. Chenevert, Assistant Attorney General, of counsel), for appellee. |
| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion.<br>Justices Pope and Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Aaron Fillmore, who is in the custody of the Illinois Department of Corrections (Department), sued three officers of the Department, Gladyse C. Taylor, Leif M. McCarthy, and Eldon L. Cooper, for failing to follow mandatory legal procedures before imposing discipline upon him for violating prison rules. He sought a writ of *mandamus*, declaratory relief, and a common-law writ of *certiorari*. The trial court granted a motion by defendants to dismiss the complaint for failure to state a cause of action. See 735 ILCS 5/2-615 (West 2016). Plaintiff appeals.

¶ 2    In our *de novo* review, we agree with the trial court that the count for declaratory judgment, count II, is legally insufficient in its entirety. We disagree, however, that the remaining two counts are legally insufficient in their entirety. Therefore, we affirm the trial court's judgment in part and reverse it in part, and we remand this case for further proceedings.

## I. BACKGROUND

¶ 3

¶ 4    In his complaint, which he filed on September 14, 2015, plaintiff alleged substantially as follows.

### A. The Parties

¶ 5

¶ 6    Plaintiff is an inmate at Lawrence Correctional Center, in Sumner, Illinois.

¶ 7    Gladyse C. Taylor is the Department's director.

¶ 8    Leif M. McCarthy is the chairperson of the adjustment committee at Lawrence Correctional Center, the committee that hears and decides inmate disciplinary reports.

¶ 9    Eldon L. Cooper is a member of the adjustment committee.

### B. The Inmate Disciplinary Report Issued to Plaintiff

¶ 10

¶ 11    On December 16, 2014, an inmate disciplinary report was served on plaintiff. In the report, a correctional officer named "J. Harper" accused plaintiff of two offenses as defined by the Department's regulations: security group threat or unauthorized organizational activity (20 Ill. Adm. Code 504.Appendix A (2003) (No. 205)) and intimidation or threats (*id.* (No. 206)). The report summarized the following evidence: (1) an "accumulation of incidents" concerning plaintiff's "involvement with the Latin Kings Security Threat Group," including statements of confidential informants, one of whom identified plaintiff as chairman of the Latin King National Regional Crown Council; (2) handwritten notes, confiscated in a shakedown, in which he discussed Latin King business and, in one note, expressed a desire to "kick *** down the steps" someone named Kevin, who had "told Springfield a lot" about the gang; and (3) recorded telephone conversations, in which plaintiff discussed various Latin King members who were in prison.

### C. Witness Request

¶ 12

¶ 13    On December 16, 2014, plaintiff submitted to the adjustment committee a document, handwritten by him, in which he requested the committee to review the "[p]hone log records"

for May 5, September 29, and October 12, 2014. He stated that those phone records would disprove the allegation, in the disciplinary report, that he made outgoing telephone calls on those days. He also "request[ed] to be shown these alleged notes" by him, confiscated in the shakedown. Finally, he made an "inmate witness request," listing the imprisoned Latin Kings whom he allegedly had discussed on the telephone. He wrote: "Each inmate will testify that [plaintiff] did not order or direct any security threat group activity within [the Department] ever."

¶ 14                    D. Plaintiff's Written Statement to the Committee

¶ 15    On December 19, 2014, in the hearing on the inmate disciplinary report, plaintiff presented a handwritten statement to the committee. In this statement, he began by pleading not guilty to the two charges. Then he made essentially four points.

¶ 16    First, he denied the allegation, in the disciplinary report, that he made "outside telephone calls" on May 5, August 30, and September 29, 2014. He wrote that if only the committee would review the "B-Wing telephone log records," those records would show he did not use the telephone on those dates.

¶ 17    Second, he insisted that if there were any recordings of his telephone calls, those recordings, when played in their entirety, would debunk the claim that he had engaged in unauthorized organizational activity.

¶ 18    Third, he denied writing the notes cited in the disciplinary report. He also denied the notes had come from his cell, property, or person, or that there were any shakedown records indicating as much. He pointed out that Harper was not a handwriting expert.

¶ 19    Fourth, he claimed the disciplinary report was untimely under the Department's regulations because it "was written beyond the [eight] days allowed after the commission of the offense or discovery thereof." 20 Ill. Adm. Code 504.30(f) (2003). He noted that the report listed the dates of "February of 2014[;] May 5, 2014[;] July 15, 2014[;] August 30, 2014[;] September of 2014[;] October 13, 2014[;] and December 7, 2014"—all of which preceded the issuance of the report, on December 16, 2014, by more than eight days.

¶ 20    His written statement concluded with the following paragraph: "I request to see the alleged confiscated 'notes' regarding the [December 16, 2014,] disciplinary report, and request that my December 16, 2014[,] witness and document request be reviewed and considered as exculpatory evidence by the Committee."

¶ 21                    E. The Disciplinary Hearing

¶ 22    Plaintiff alleges that, in the disciplinary hearing, which was held on December 19, 2014, the two members of the adjustment committee, McCarthy and Cooper, declined to show him the notes in question and declined to personally review the notes, the telephone logs, or the telephone recordings. As for plaintiff's witness request, "Cooper stated that Jerry Harper (the prison official who wrote the [disciplinary report] against plaintiff) [had] directed the Committee not to call any of plaintiff's witnesses[;] thus, no witnesses would be called." Also, Cooper told plaintiff, in the disciplinary hearing, "that the Committee [had been] directed by higher[-]up prison authorities to find plaintiff guilty and revoke a year [of] good conduct credits and impose punitive segregation and other punitive sanctions for a year." Upon receiving that news, plaintiff "made a verbal objection" to the committee's lack of

impartiality, but McCarthy and Cooper "refused to recuse themselves." All this is according to plaintiff's complaint.

### F. The Final Summary Report

On January 3, 2015, the Department served upon plaintiff a "Final Summary Report," in which McCarthy and Cooper found plaintiff guilty of "Gang or Unauthorized Organization Activity" and "Intimidation or Threats." They recommended one year in "C grade," one year of segregation, revocation of one year of good-conduct credits, restriction for one year to $15 per month, and one year of "Contact Visits Restriction." The chief administrative officer, Stephen B. Duncan, approved the recommendation.

### G. Plaintiff's Grievance

On January 5, 2015, plaintiff administratively appealed the discipline by filing a grievance. He complained of the committee members' refusal to produce and personally review the notes, telephone logs, and telephone recordings; their refusal to recuse themselves; the untimeliness of the disciplinary report; and other irregularities, which we will discuss in greater detail later in this opinion.

On August 13, 2015, by adding her signature to a form, Taylor concurred with the denial of plaintiff's grievance. The Department "[found] no violation of the offender's due process in accordance with [sections 504.30 and 504.80 (20 Ill. Adm. Code 504.30, 504.80 (2003))]," to quote the check-marked preprinted language of the form. The Department was "reasonably satisfied the offender committed the offense cited in the report."

### II. ANALYSIS
### A. The Request for *Mandamus* (Count I)

Because the motion for dismissal was pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)), the question is whether the complaint states a cause of action for *mandamus*, declaratory relief, or a common-law writ of *certiorari*: the three forms of relief that plaintiff sought in the three counts of his complaint. See *Johannesen v. Eddins*, 2011 IL App (2d) 110108, ¶ 27.

We answer that question *de novo*, taking the well-pleaded facts or specific factual allegations of the complaint to be true and disregarding any conclusory allegations unsupported by well-pleaded facts. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 26; *Primax Recoveries, Inc. v. Atherton*, 365 Ill. App. 3d 1007, 1010 (2006). Not only will we assume the well-pleaded facts in the complaint to be true, but we will regard those facts in the light most favorable to plaintiff. See *Johannesen*, 2011 IL App (2d) 110108, ¶ 27. If, from the well-pleaded facts, a reasonable inference could be drawn in plaintiff's favor—which is to say, in favor of the legal sufficiency of the complaint—we will draw that inference. See *id.* "Dismissal pursuant to section 2-615 *** is only proper where, when construing the allegations of the complaint in the light most favorable to plaintiff, it clearly appears that no set of facts can be proved under the pleadings which will entitle the plaintiff to recover." *Armstrong v. Snyder*, 336 Ill. App. 3d 567, 568-69 (2003).

With those ground rules in mind, we first evaluate the legal sufficiency of count I, the count seeking *mandamus*. By its factual allegations, count I must establish three propositions.

First, under the law, plaintiff has a clear right to the performance of the ministerial act that he seeks to compel the public officer to perform. See *Burris v. White*, 232 Ill. 2d 1, 7 (2009); *Baldacchino v. Thompson*, 289 Ill. App. 3d 104, 109 (1997). Second, plaintiff demanded that the public officer perform the act (unless such a demand would have been futile), and the public officer refused to do so. See *Eley v. Cahill*, 126 Ill. App. 2d 272, 276-77 (1970). Third, the public officer has clear authority to comply with the proposed writ of *mandamus*. See *Burris*, 232 Ill. 2d at 7.

¶ 33 Plaintiff argues that defendants have both authority and a duty to comply with the Department's regulations. We do not understand defendants as disputing that argument. "Administrative regulations have the force and effect of law" (*People v. Bonutti*, 212 Ill. 2d 182, 188 (2004)), and a prisoner may file a complaint for *mandamus* to compel correctional officers to perform nondiscretionary duties laid down in the Department's regulations (*West v. Gramley*, 262 Ill. App. 3d 552, 557 (1994); *Shea v. Edwards*, 221 Ill. App. 3d 219, 221 (1991); *Taylor v. Franzen*, 93 Ill. App. 3d 758, 765 (1981))—assuming the prisoner has a substantial personal interest in the matter (see *Warden v. Byrne*, 102 Ill. App. 3d 501, 506 (1981); *North v. Board of Trustees of the University of Illinois*, 137 Ill. 296, 301 (1891)).

¶ 34 Citing several paragraphs of his complaint, plaintiff argues he specifically alleged violations of the Department's regulations and that *mandamus* should compel compliance with these regulations. We will discuss the alleged violations one by one.

¶ 35 1. *Review of the Inmate Disciplinary Report by a Hearing Investigator*

¶ 36 Under section 504.60(a), "[t]he Chief Administrative Officer shall appoint one or more Hearing Investigators[,] who shall review all *major* disciplinary reports." (Emphasis added.) 20 Ill. Adm. Code 504.60(a) (2003). Plaintiff claims the Department violated this section. In support of his claim, he references the inmate disciplinary report, a copy of which is attached to his complaint as exhibit A: in the report, the box next to "Hearing Investigator's Review Required" is blank, as is the line for the hearing officer's signature.

¶ 37 Evidently, judging by exhibit A, the Department decided a hearing investigator's review was not required in this case. Necessarily, that decision entailed the exercise of judgment, because a hearing investigator's review was required only for "major" disciplinary reports, and it was a matter of judgment whether a disciplinary report was "major." *Id.*

¶ 38 No doubt, plaintiff would regard that decision as a misjudgment or an abuse of discretion, but the conscientiousness of the exercise of judgment or discretion is beside the point. The question is not whether the exercise of judgment or discretion was sound; the question is whether the exercise of judgment or discretion was required. *Mandamus* "will *not* be granted when the act in question involves the exercise of discretion." (Emphasis in original.) *The Y-Not Project, Ltd. v. Fox Waterway Agency*, 2016 IL App (2d) 150502, ¶ 35. The act that the plaintiff seeks to compel in a *mandamus* action must be purely ministerial in nature, involving no use of judgment. *Id.* This act involved the use of judgment. Thus, with respect to the omission of a hearing investigator's review, plaintiff states no cause of action for *mandamus*.

¶ 39                          2. *Failure To Serve the Disciplinary Report*
                             *Upon Plaintiff by the Regulatory Deadline*

¶ 40         Section 504.30(f) provides as follows: "Service of a disciplinary report upon the offender shall commence the disciplinary proceeding. In no event shall a disciplinary report *** be served upon an adult offender more than [eight] days *** after the commission of an offense or the discovery thereof unless the offender is unavailable or unable to participate in the proceeding." 20 Ill. Adm. Code 504.30(f) (2003).

¶ 41         Plaintiff alleges the disciplinary report was issued on December 16, 2014, and that the disciplinary report "lists incident dates of February of 2014; May 5, 2014; July 15, 2014; August 30, 2014; September of 2014; October 13, 2014[;] [and] December 7, 2014"—all of which predate the issuance of the disciplinary report by more than eight days. Obviously, the disciplinary report could not have been served upon him before it was issued. He argues that, because of the Department's failure to meet the eight-day deadline for serving the disciplinary report on him, the Department has a clear duty, under section 504.30(f), to withdraw the disciplinary report and the associated penalties. See *id.*

¶ 42         Even this eight-day deadline, however, requires the exercise of judgment or discretion: "In no event shall a disciplinary report *** be served upon an adult offender more than [eight] days *** *after the commission of an offense or the discovery thereof* unless the offender is unavailable or unable to participate in the proceeding." (Emphasis added.) *Id.* It requires judgment to determine whether and when an offense was committed. An evaluation must be performed. The Department must compare the known facts with the elements of the offense and must reach a conclusion. For that matter, it requires judgment to determine whether the offender is able to participate in the proceeding. No doubt plaintiff would argue that judgment, under these circumstances, could have been soundly exercised in only one way. Even so, judgment had to be exercised. It follows that the Department's duty under section 504.30(f) is not purely ministerial and that, with respect to the alleged noncompliance with the eight-day deadline in that section, plaintiff states no cause of action for *mandamus*. See *Fox Waterway*, 2016 IL App (2d) 150502, ¶ 35.

¶ 43                          3. *Failure To Provide a Written Reason for Denying*
                             *Plaintiff's Request for the In-Person Testimony of Witnesses*

¶ 44         Plaintiff claims the Department violated section 504.80(h)(4) of its regulations (20 Ill. Adm. Code 504.80(h)(4) (2003)) by failing to provide a written reason for denying his request for the in-person testimony of witnesses at his disciplinary hearing.

¶ 45         Defendants respond that plaintiff failed to fulfill a procedural precondition. They observe that, under section 504.80(f)(2) (20 Ill. Adm. Code 504.80(f)(2) (2003)), "[t]he [witness] request [had to] be in writing on the space provided in the disciplinary report" and that the request had to "include an explanation of what the witnesses would state." Instead of using the designated space in the disciplinary report to request witnesses, plaintiff used a separate sheet of paper, and he did not explain what the witnesses would state. On the authority of *Taylor v. Frey*, 406 Ill. App. 3d 1112, 1118 (2011), defendants argue the Department was within its discretion to refuse to hear witnesses, given that plaintiff never requested them in the manner that subsection (f)(2) required.

¶ 46    To clarify, under the Department's regulation, there are two kinds of requests for witnesses: a request for the prehearing interview of witnesses (20 Ill. Adm. Code 504.80(f)(2) (2003)) and a request for the in-person testimony of witnesses in the disciplinary hearing (20 Ill. Adm. Code 504.80(h)(3) (2003)). It is unclear which kind of witness request plaintiff intended to make. Was he requesting a prehearing interview of the witnesses pursuant to subsection (f)(2), or was he requesting the in-person testimony of the witnesses pursuant to subsection (h)(3)? In his request, a copy of which is attached to the complaint as exhibit B, he confusingly cited both subsection (f)(2) and subsection (h)(3). If he meant to request the prehearing interview of witnesses pursuant to subsection (f)(2), he would have had to do so in the space provided in the disciplinary report (see 20 Ill. Adm. Code 504.80(f)(2) (2003) ("The request shall be in writing on the space provided in the disciplinary report and shall include an explanation of what the witnesses would state.")). He did not do so. Whether that omission was problematic depended on which kind of witness request he was making—and, in that respect, his witness request was unclear. His request did not specifically say what he wanted the Department to do: interview the witnesses ahead of time or arrange for their attendance in the disciplinary hearing, and as we noted, his request cited both subsection (f)(2) and subsection (h)(3).

¶ 47    Because of this ambiguity in his request, the Department had no "clear duty" to provide a written reason for denying the request. *Orenic v. Illinois State Labor Relations Board*, 127 Ill. 2d 453, 467-68 (1989). That duty under section 504.80(h)(4) (20 Ill. Adm. Code 504.80(h)(4) (2003)) would have kicked in only if plaintiff requested the in-person attendance of witnesses. It is unclear if he did so. Therefore, the Department had no clear duty, under section 504.80(h)(4), to provide a written reason for the denial. It follows that, with respect to the Department's alleged failure to provide a written reason for denying the in-person attendance of witnesses (see *id.*), plaintiff states no cause of action for *mandamus*.

¶ 48                    4. *Failure To Place Plaintiff Under Investigation*

¶ 49    Plaintiff claims the Department violated section 504.30(e) (20 Ill. Adm. Code 504.30(e) (2003)) in that the Department "never placed [him] under investigation." That section provides: "If an offender is suspected of committing a disciplinary offense, an investigative disciplinary report, hereinafter referred to as an investigative report, *may* be issued that reasonably informs the offender of the subject of the investigation to the extent that safety and security allow." (Emphasis added.) *Id.* Because the word "may" calls for an exercise of discretion (*Krautsack v. Anderson*, 223 Ill. 2d 541, 554 (2006)), and because *mandamus* may compel the performance of only a nondiscretionary, ministerial duty (*Fox Waterway*, 2016 IL App (2d) 150502, ¶ 35), we conclude that, with respect to the alleged violation of section 504.30(e), plaintiff states no cause of action for *mandamus*.

¶ 50                    5. *The Committee's Failure To Independently Review*
                         *the Notes and the Telephone Logs and Recordings*

¶ 51    Plaintiff claims the committee members violated section 504.80(g) (20 Ill. Adm. Code 504.80(g) (2003)) by failing to independently review the notes and the telephone logs and recordings, as opposed to relying merely on summaries and quotations provided by other correctional officers.

¶ 52    Section 504.80(g) consists of a single sentence, which reads as follows: "The Committee shall consider all material presented that is relevant to the issue of whether or not the offender committed the offense." *Id.* It requires an exercise of judgment to determine which materials are relevant—even if relevance should be obvious. Therefore, with respect to the alleged violation of section 504.80(g), plaintiff fails to state a cause of action for *mandamus*. See *Fox Waterway*, 2016 IL App (2d) 150502, ¶ 35.

¶ 53    In so holding, we acknowledge the federal cases that plaintiff cites. Those cases found a due-process violation (or at least an arguable due-process violation) in the refusal of a prison disciplinary tribunal to produce incriminating documents allegedly written by the prisoner (*Young v. Kann*, 926 F.2d 1396, 1397 (3d Cir. 1991); *Scarpa v. Ponte*, 638 F. Supp. 1019, 1023 (D. Mass. 1986)) or in the refusal to review primary evidentiary materials as opposed to secondhand summaries of those materials (*McIntosh v. Carter*, 578 F. Supp. 96, 98 (W.D. Ky. 1983)). For two reasons, however, we find those federal cases to be inapposite. First, decisions of the United States District Court and the United States Court of Appeals do not establish Illinois law (see *People v. Pitzman*, 293 Ill. App. 3d 282, 291 (1997)), and, thus, they do not establish a "clear duty" on the part of defendants (*Burris*, 232 Ill. 2d at 7). Second, none of those federal cases sought *mandamus*.

¶ 54            6. *The Committee's Refusal To Produce the Notes*

¶ 55    Plaintiff alleges that, both before and during the disciplinary hearing, he requested to see the notes he allegedly had written and that the Department denied those requests, thereby violating section 504.80(f)(1) (20 Ill. Adm. Code 504.80(f)(1) (2003)).

¶ 56    Under section 504.80(f)(1), "[t]he offender may *** produce any relevant documents in his or her defense." *Id.* Thus, instead of having the right to present any and all documents in his or her defense, the offender has a right to present only "relevant" documents in his or her defense. *Id.* To decide whether a document is presentable in the disciplinary hearing, the Department has to decide whether it is relevant. Because the determination of relevancy requires an exercise of judgment, plaintiff fails to state a cause of action for *mandamus* with respect to the alleged violation of section 504.80(f)(1). See *Fox Waterway*, 2016 IL App (2d) 150502, ¶ 35. Again, it does not matter if judgment could have been reasonably exercised in only one way; judgment is judgment.

¶ 57            7. *The Committee Members' Refusal To Recuse Themselves*

¶ 58    Plaintiff argues the committee members should have recused themselves because, having been directed by higher-up prison authorities to find him guilty and to impose particular penalties, they lacked impartiality.

¶ 59    The asserted duty of recusal, however, would not have been a *ministerial* duty. Rather, the committee members would have had to perform a legal evaluation: they would have had to judge whether, in the light of relevant case law, the alleged directive from above disqualified them from being impartial hearing officers. Therefore, with respect to their refusal to recuse themselves, plaintiff fails to state a cause of action for *mandamus*. See *Fox Waterway*, 2016 IL App (2d) 150502, ¶ 35.

¶ 60　　　　　　　　8. *Failure To Follow a Required Procedure After a Prisoner Objects to*
*Committee Members on the Ground of Their Lack of Impartiality*

¶ 61　　　　In his complaint, plaintiff makes the following factual allegations, which, again, for purposes of section 2-615, we assume to be true. See *Schweihs*, 2016 IL 120041, ¶ 27. In the disciplinary hearing, one of the defendants, Eldon L. Cooper, who was a member of the adjustment committee, told plaintiff "that the Committee [had been] directed by higher[-]up prison authorities to find plaintiff guilty and revoke a year['s] good conduct credit and impose punitive segregation and other punitive sanctions for a year." Plaintiff immediately made a verbal objection to the committee members' lack of impartiality, but they refused to recuse themselves. Afterward, in its final summary report, the committee made no mention of plaintiff's objection to the committee members' lack of impartiality.

¶ 62　　　　Plaintiff argues this omission violated section 504.80(d) (20 Ill. Adm. Code 504.80(d) (2003)), which provides as follows: "Any person *** who is *** not impartial shall not serve on the Adjustment Committee hearing that disciplinary report. An offender who objects to a member of the Committee based on a lack of impartiality must raise the matter at the beginning of the hearing. *The Committee shall document the basis of the objection and the decision in the Adjustment Committee summary*." (Emphasis added.)

¶ 63　　　　Plaintiff alleged he made a timely objection to the committee members' lack of impartiality, and the committee had a clear, nondiscretionary duty, under section 504.80(d), to "document the basis of the objection and the decision in the Adjustment Committee summary." *Id.* In the grievance that plaintiff filed on January 5, 2015, one of his complaints was that the committee had "arbitrarily failed to document [his] objections concerning the Committee['s] not being impartial, in violation of [section] 504.80(d)." The Department denied his grievance. Therefore, in this context, all the elements of *mandamus* are present: "a clear right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the [proposed] writ." *Burris*, 232 Ill. 2d at 7. With respect to the Department's noncompliance with section 504.80(d), plaintiff states a cause of action for *mandamus*.

¶ 64　　　　　　　9. *Failure To Include a Summary of Plaintiff's Written Statement*
¶ 65　　　　Section 504.80(*l*)(1) provides as follows:

　　　　"*l*) A written record shall be prepared and signed by all members of the Committee that contains:

　　　　1) A summary of oral and written statements and other evidence presented." 20 Ill. Adm. Code 504.80(*l*)(1) (2003).

Subsection (o) provides: "A copy of the disciplinary report and Adjustment Committee summary shall be forwarded to the Chief Administrative Officer for review and approval and a copy shall be filed in the offender's record." 20 Ill. Adm. Code 504.80(o) (2003). Apparently, the summary of the offender's written statement is part of what the "Chief Administrative Officer" would review in deciding whether to approve the "Adjustment Committee dispositions." 20 Ill. Adm. Code 504.80(p) (2003).

¶ 66　　　　Plaintiff alleges that although, in the disciplinary hearing, he submitted to the adjustment committee a written statement (exhibit C of the complaint), the committee's final summary report (exhibit D) lacks a summary of his written statement. Plaintiff subsequently

complained, in his grievance (exhibit E), that the committee had "failed to give a summary of [his] written statement, in violation of [section] 504.80(*l*)(1)," but the Department denied his grievance.

¶ 67     Because the committee members had a clear ministerial duty to include, in the administrative record, signed by them, a summary of plaintiff's written statement (see 20 Ill. Adm. Code 504.80(*l*)(1) (2003)), plaintiff states a cause of action for *mandamus* in this respect. See *Fox Waterway*, 2016 IL App (2d) 150502, ¶ 35; *Thompson v. Lane*, 194 Ill. App. 3d 855, 863 (1990) (this regulatory requirement of summarizing all the evidence, including the oral and written statements, "is not to be taken lightly").

¶ 68                     B. The Request for a Declaratory Judgment (Count II)

¶ 69     We have held that an action for a common-law writ of *certiorari*, instead of an action for a declaratory judgment, is the correct means by which to seek the review of penalties imposed in a prison disciplinary proceeding. *Alicea v. Snyder*, 321 Ill. App. 3d 248, 253 (2001). Therefore, plaintiff fails to state a cause of action for a declaratory judgment. See *id.*

¶ 70                 C. The Request for a Common-Law Writ of *Certiorari* (Count III)

¶ 71                     1. *The Availability of a Common-Law Action for* Certiorari

¶ 72     If an administrative agency issues a quasi-judicial decision (*McKeown v. Moore*, 303 Ill. 448, 453 (1922)) and the statute conferring power on the agency does not adopt the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)) or provide any other method of judicial review, the decision is reviewable in an action for a common-law writ of *certiorari* (*Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996)). Because the statutory provisions pertaining to prison disciplinary procedures (730 ILCS 5/3-8-7 to 3-8-10 (West 2014)) neither adopt the Administrative Review Law nor provide any other method of judicial review, prison disciplinary proceedings are reviewable in an action for *certiorari*. *Alicea*, 321 Ill. App. 3d at 253.

¶ 73                     2. *The Nature of a Common-Law Action for* Certiorari

¶ 74     Whereas *mandamus* compels a governmental official to perform a ministerial act, a common-law writ of *certiorari* "bring[s] before the court issuing it the record of the inferior tribunal for review." *Barden v. Junior College District No. 520*, 132 Ill. App. 2d 1038, 1038 (1971); see also *People ex rel. Elmore v. Allman*, 382 Ill. 156, 160 (1943). The circuit court will issue a writ of *certiorari* to the agency, and within the time specified in the writ (see *Murphy v. Cuesta, Rey & Co.*, 381 Ill. 162, 168 (1942)), the agency must provide the court with the record of the administrative proceedings so that the court can determine from the record—and only from the record (*Reichert v. Court of Claims*, 203 Ill. 2d 257, 260 (2003); *Goodfriend v. Board of Appeals*, 18 Ill. App. 3d 412, 418-19 (1973))—whether the agency acted within its statutory authority and in accordance with the law (*Funkhouser v. Coffin*, 301 Ill. 257, 260 (1921); *Goodfriend*, 18 Ill. App. 3d at 418-19). The burden will be on the agency to provide a record adequate to that purpose: a record consisting of facts, not mere conclusions (*Funkhouser*, 301 Ill. at 261). *Frye v. Hunt*, 365 Ill. 32, 37 (1936) ("Where the question is whether jurisdictional facts were established, mere conclusions of law are insufficient and the record must show the existence of the facts required to authorize the

inferior tribunal or officer to act, and this evidence may properly be reviewed by the court."); *Funkhouser*, 301 Ill. at 264 ("The record made on the return of the writ failing to show any facts upon which [the] removal [of the appellee from his municipal employment] was justified, the trial court erred in quashing the writ and in not granting the motion of the appellee to quash the original [(administrative)] proceedings [for his removal].").

¶ 75    After reviewing the record from the inferior tribunal, the trial court should enter either of two judgments. If, from the record, it appears that the inferior tribunal lacked jurisdiction or that its actions were inconsistent with the law, the court may quash the proceedings of the inferior tribunal. *Goodfriend*, 18 Ill. App. 3d at 419. Alternatively, if, from the record, it appears that the inferior tribunal had jurisdiction and that its actions were consistent with the law, the court should dismiss the *certiorari* count and quash the writ. *Id.*

¶ 76                                    3. *The Pleading Requirements*

¶ 77    A petition for a common-law writ of *certiorari* must allege "good cause" for the issuance of a writ (*City of Chicago v. Condell*, 224 Ill. 595, 597 (1906)): the petition must allege that the inferior tribunal or the agency exercising a quasi-judicial function (*Reichert*, 203 Ill. 2d at 260) failed to comply with the law or exceeded its authority (*City of Kankakee v. Department of Revenue*, 2013 IL App (3d) 120599, ¶ 14) with the result that the petitioner suffered "substantial injury or injustice" (*Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 428 (1990)). If the plaintiff (1) was a party to the administrative proceeding (*Board of Education of Woodland Community Consolidated School District 50 v. Illinois State Charter School Comm'n*, 2016 IL App (1st) 151372, ¶ 39), (2) was substantially injured by the agency's failure to follow an essential procedural requirement applicable to such a proceeding (*id.*; *C&K Distributors, Inc. v. Hynes*, 122 Ill. App. 3d 525, 528 (1984)), and (3) has no other method of review (*Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 333 (2009)), the plaintiff has a cause of action for *certiorari*.

¶ 78    Taking the well-pleaded facts of the complaint to be true (see *Schweihs*, 2016 IL 120041, ¶ 27), as opposed to conclusions, which we disregard (see *Johannesen*, 2011 IL App (2d) 110108, ¶ 27), and resolving all reasonable inferences in plaintiff's favor (see *Schweihs*, 2016 IL 120041, ¶ 27; *Johannesen*, 2011 IL App (2d) 110108, ¶ 27), we see two failures to comply with law that arguably caused substantial injury or injustice to him.

¶ 79                                4. *Refusal To Produce the Notes in Question*

¶ 80    First, plaintiff alleges that, both before and during the disciplinary hearing, he requested to see the notes he allegedly had written. In exhibit B of the complaint, addressed to the adjustment committee and dated December 16, 2014, plaintiff stated: "I request to be shown the alleged 'notes.' " In exhibit C of the complaint, likewise addressed to the adjustment committee and dated December 19, 2014, he cited section 504.80(f)(1) (20 Ill. Adm. Code 504.80(f)(1) (2003)) and stated: "I request to see the alleged confiscated 'notes' regarding the 12-16-14 disciplinary report, and request that my December 16, 2014[,] witness and document request be reviewed and considered as exculpatory evidence by the Committee." Without explanation, the committee refused to produce the notes in the disciplinary hearing, or so plaintiff alleges in his complaint. Afterward, in his grievance, plaintiff complained: "The Committee arbitrarily failed to review or allow me to review the alleged 'notes' stated in the 12-16-14 [inmate disciplinary report]." The Department denied the grievance,

- 11 -

"find[ing] no violation of the offender's due process in accordance with [sections 504.80 (20 Ill. Adm. Code 504.80 (2003)) and 504.30 (20 Ill. Adm. Code 504.30 (2003))]."

¶ 81    Under section 504.80(f)(1) (20 Ill. Adm. Code 504.80(f)(1) (2003)), "[t]he offender may *** produce any relevant documents in his or her defense." Thus, the Department had a duty to allow plaintiff to produce any relevant documents in his defense. Given that the disciplinary report cited the notes as evidence against plaintiff, it would be untenable to characterize the notes as irrelevant. The Department was required to follow its own regulations (see *Thompson*, 194 Ill. App. 3d at 860), and it was the Department's duty, under section 504.80(f)(1), to allow plaintiff to "produce" the notes in his own defense. 20 Ill. Adm. Code 504.80(f)(1) (2003). One of the meanings of "produce" is to "show *** (something) for consideration" or "inspection." The New Oxford American Dictionary 1359 (2001). If, in his own defense, plaintiff wanted to show the notes in question, to prove he was not their author, and if the Department had exclusive possession of the notes and refused to relinquish them for his use in the disciplinary hearing, the Department violated its regulatory duty to allow plaintiff to "produce any relevant documents in his *** defense" (20 Ill. Adm. Code 504.80(f)(1) (2003)). See also *Thompson*, 194 Ill. App. 3d at 859 (one of the due-process rights of a prisoner in a prison disciplinary proceeding is to "present documentary evidence in his defense"). The alleged violation of section 504.80(f)(1) is significant and in itself would justify the issuance of a common-law writ of *certiorari*. See *Stratton*, 133 Ill. 2d at 428; *Condell*, 224 Ill. at 597; *City of Kankakee*, 2013 IL App (3d) 120599, ¶ 14; *Tanner v. Court of Claims*, 256 Ill. App. 3d 1089, 1092 (1994) ("Where a plaintiff brings into issue the alleged violation of his procedural and substantive rights, the petition is not subject to dismissal, as such issue cannot be determined as a matter of law upon the bare allegations of the petition.").

¶ 82    In response to a writ of *certiorari*, the Department should be required to produce an administrative record showing that, contrary to plaintiff's allegation (which, for purposes of the motion for dismissal, we take as true (see *Schweihs*, 2016 IL 120041, ¶ 27)), the Department produced the notes in question so that plaintiff could use them, in his own defense, in the disciplinary hearing.

¶ 83            5. *The Refusal of the Committee Members To Recuse Themselves*

¶ 84    Second, plaintiff alleges the committee members should have recused themselves because, having been directed by higher-up prison authorities to find him guilty and to impose particular penalties, they lacked impartiality. In a disciplinary hearing, the prisoner has a due-process right to, among other things, an impartial hearing officer. *Epstein v. Lane*, 189 Ill. App. 3d 63, 64 (1989).

¶ 85    We begin with the presumption that the members of the adjustment committee were "objective and capable of fairly judging the issues." *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 330 (2009). Like all presumptions, however, that presumption is rebuttable. "Bias or prejudice may *** be shown if a disinterested observer might conclude that the official had in some measure adjudged the facts as well as the law of the case in advance of hearing it." *Id.* Taking the well-pleaded facts of the complaint to be true and drawing all reasonable inferences in plaintiff's favor (see *Schweihs*, 2016 IL 120041, ¶ 27; *Johannesen*, 2011 IL App (2d) 110108, ¶ 27), a disinterested observer might conclude that the members of the adjustment committee had prejudged the case before hearing it,

considering it is alleged that (1) they personally examined none of the primary evidentiary materials, (2) Cooper told plaintiff, in the hearing, that their superiors had ordered them to find him guilty and to impose certain penalties, and (3) they then found him guilty and imposed precisely the penalties their superiors had ordered them to impose. Given the factual allegations of the complaint, which our standard of review obliges us to take as true, the impartiality of the administrative tribunal is sufficiently in question that good cause exists for the issuance of a writ of *certiorari*. See *Stratton*, 133 Ill. 2d at 428; *Condell*, 224 Ill. at 597; *City of Kankakee*, 2013 IL App (3d) 120599, ¶ 14; *Tanner*, 256 Ill. App. 3d at 1092.

¶ 86      This claim of bias should not take the Department by surprise. In his grievance, defendant stated: "[Correctional Officer] Cooper *** stated that the committee was told to give me a year across the board and find me guilty. I made verbal objections to the committee not being impartial." This was a serious allegation, which plaintiff formally made in a grievance, and one would expect the administrative record to contain a rebuttal, considering that Taylor denied the grievance. In response to a writ of *certiorari*, the Department should produce this record.

¶ 87      *6. The Eight-Day Deadline for Serving the Disciplinary Report*

¶ 88      Additionally, in his count for *certiorari*, plaintiff alleges the Department violated section 504.30(f) (20 Ill. Adm. Code 504.30(f) (2003)) in that "[t]he December 16, 2014, [inmate disciplinary report] was written beyond the statutory eight (8) days allowed after the incident." Specifically, he alleges the disciplinary report was written (and therefore served upon him) more than eight days after the final evidentiary incident listed in the disciplinary report, namely, the telephone call of December 7, 2014.

¶ 89      That is not enough, however, to establish a violation of the regulation. Plaintiff must plead facts that would, if proved, establish the Department's noncompliance with the eight-day deadline in section 504.30(f) (see *Teter v. Clemens*, 112 Ill. 2d 252, 256 (1986)), and merely by proving that the Department served the disciplinary report on him more than eight days after the final telephone call, plaintiff would not prove noncompliance with the eight-day deadline.

¶ 90      In concluding that plaintiff committed the offense of security group threat or unauthorized organization activity, the Department relied not only on the telephone calls but also on statements by confidential informants. We do not know when the Department interviewed these confidential informants. The Department could have done so the day before serving the disciplinary report on plaintiff. Likewise, for purposes of the offense of intimidation, we do not know when the Department came into the possession of a handwriting sample by plaintiff to compare it with the note that Harper had confiscated in the shakedown. For all we know, the Department made the comparison the day before serving the disciplinary report on plaintiff. Therefore, with respect to the alleged failure to meet the eight-day deadline in section 504.30(f), plaintiff has failed to plead a cause of action for a common-law writ of *certiorari*.

D. The Rationale for the Motion for Dismissal:
the Suggestion That the Illinois Administrative Code
Confers No Rights on Prisoners

In support of its motion for dismissal, the State cited *Ashley v. Snyder*, 316 Ill. App. 3d 1252, 1258 (2000), and two cases that relied on *Ashley*: *Duane v. Hardy*, 2012 IL App (3d) 110845, ¶ 15, and *Dupree v. Hardy*, 2011 IL App (4th) 100351, ¶ 25.

In *Ashley*, a correctional center in which the plaintiff was imprisoned issued a policy-revising bulletin, which lessened the amount of personal property that inmates were permitted to keep in their cells. Previously, an orientation manual permitted inmates to keep more personal property. *Ashley*, 316 Ill. App. 3d at 1254. The plaintiff contended that the bulletin violated various provisions of the United States and Illinois Constitutions, as well as several state and federal statutes. *Id.* at 1253.

One of the plaintiff's constitutional contentions was that the bulletin deprived him of property without the due process of law. *Id.* at 1255. We rejected that contention because, in *Sandin v. Conner*, 515 U.S. 472, 477-84 (1995), the Supreme Court had held that, for purposes of the due-process clause (U.S. Const., amend. XIV), states could not "create enforceable liberty interests in freedom from the routine deprivations and discomforts of prison life." *Ashley*, 316 Ill. App. 3d at 1255. Although, for the benefit of prisoners, states could " 'create liberty interests *** protected by the [d]ue [p]rocess [c]lause,' " those interests would " 'generally [be] limited to freedom from restraint which *** imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.' " (Emphasis in original.) *Id.* at 1255-56 (quoting *Sandin*, 515 U.S. at 484). Restricting the amount of personal property inmates could keep in their cells did not qualify as an atypical and significant hardship, and thus, for purposes of due process, such a restriction did "not impact a protected liberty interest." *Id.* at 1256.

We likewise rejected the plaintiff's other constitutional theories. The bulletin did not change the definition of his crime or create any risk of increasing the punishment for his crime, and hence the *ex post facto* clause (Ill. Const. 1970, art. I, § 16) was irrelevant. *Ashley*, 316 Ill. App. 3d at 1257. The bulletin was not an unreasonable seizure under the fourth amendment (U.S. Const., amend. IV) because the fourth amendment was inapplicable in prison cells. *Ashley*, 316 Ill. App. 3d at 1257. Nor did the bulletin violate the eighth amendment (U.S. Const., amend. VIII); limiting the amount of property that inmates could keep in their cells was part of the penalty that criminal offenders typically had to pay for their offenses. *Ashley*, 316 Ill. App. 3d at 1257.

We also were unconvinced that statutory law lent any support to the plaintiff's claim. Rather, section 3-4-3 of the Unified Code of Corrections (730 ILCS 5/3-4-3 (West 1998)) explicitly contemplated that inmates would " 'not [be] allowed' " to keep some " 'personal property.' " *Ashley*, 316 Ill. App. 3d at 1258 (quoting 730 ILCS 5/3-4-3 (West 1998)).

Those holdings rightly disposed of all the constitutional and statutory claims that the plaintiff had raised in *Ashley*. Nevertheless, in an "epilogue," we added:

> "In so holding, we note that this sort of 'prisoner's rights' case depletes the resources of prosecutors, the judiciary, and [the Department], and unnecessarily diverts [the Department's] attention from ensuring that prisoners are granted their genuine rights. Prison regulations, such as those contained in the inmate orientation

manual relied on here, were *never* intended to confer rights on inmates or serve as a basis for constitutional claims. *Sandin*, 515 U.S. at 482 \*\*\*. Instead, Illinois [Department] regulations, as well as the Unified Code, were designed to provide guidance to prison officials in the administration of prisons. In addition, Illinois law creates no more *rights* for inmates than those which are constitutionally required.

    \*\*\*

    \*\*\* Inmates thus have a constitutional right to adequate shelter, food, drinking water, clothing, sanitation, medical care, and personal safety. [Citations.] Prisoners also have a reasonable right of access to courts and a right to a reasonable opportunity to exercise religious freedom under the first amendment. [Citation.] Beyond these, prisoners possess no other rights, only privileges." (Emphases in original.) *Id.* at 1258-59.

¶ 98    It is true that "[p]rison regulations" *of the type represented by the inmate orientation manual* confer no rights on inmates (*id.* at 1258), but that is because bulletins, handbooks, and similar materials are not the Illinois Administrative Code (see *Lucas v. Department of Corrections*, 2012 IL App (4th) 110004, ¶ 14). A procedural operating manual is "designed to provide guidance" (*Ashley*, 316 Ill. App. 3d at 1258), but the Illinois Administrative Code is different: it is more than guidance; it has "the force and effect of law" (*People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008); *People v. Montalvo*, 2016 IL App (2d) 140905, ¶ 18). To say that "Illinois law," including the Illinois Administrative Code, "creates no more *rights* for inmates than those which are constitutionally required" would be to say that, for inmates, Illinois law is redundant and superfluous—it might as well not exist for them. (Emphasis in original.) *Ashley*, 316 Ill. App. 3d at 1258. Not only is that statement unsupported by citation to any authority, but it is irreconcilable with case law preceding *Ashley*. It had always been the law that, in prison disciplinary proceedings, the Department had to follow its own promulgated regulations (*Clayton-El v. Lane*, 203 Ill. App. 3d 895, 899 (1990); *Thompson*, 194 Ill. App. 3d at 860; *People ex rel. Yoder v. Hardy*, 116 Ill. App. 3d 489, 495 (1983)) and that inmates could sue to compel correctional officers to perform nondiscretionary duties set forth in the Department's regulations (*West*, 262 Ill. App. 3d at 557; *Shea*, 221 Ill. App. 3d at 221; *Taylor*, 93 Ill. App. 3d at 765). To the extent that *Ashley* suggests otherwise, we decline to follow *Ashley*.

¶ 99    It is true that, *for purposes of constitutional due process*, the *liberty interests* that state statutes create are "generally limited to freedom from restraint which \*\*\* imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. That does not mean, however, that it is impossible for a state statute to create other, nonconstitutional rights for inmates, enforceable by *mandamus*. Several years after the issuance of *Ashley*, in an original *mandamus* action brought by a prisoner (see Ill. S. Ct. R. 381(c) (eff. Mar. 1, 2001)), the supreme court described the elements of *mandamus* as follows:

    "*Mandamus* is an extraordinary remedy to enforce, as a matter of right, the performance of official duties by a public officer where no exercise of discretion on his part is involved. \*\*\* [Citation.] To obtain relief, a plaintiff must establish a clear right to *mandamus*. [Citation.] *Mandamus* is improper where its effect is to substitute the court's judgment or discretion for that of the body which is commanded to act.

- 15 -

\*\*\* [Citation.] Consequently, we will not grant *mandamus* relief unless the plaintiff has clearly shown: (1) an affirmative right to relief; (2) defendant's duty to act; and (3) defendant's authority to comply with the order. [Citation.]" (Internal quotation marks omitted.) *Holly v. Montes*, 231 Ill. 2d 153, 159 (2008).

Notably absent from this description of *mandamus* is any requirement that the plaintiff-prisoner's "affirmative right to relief" be constitutional. *Id.* The prisoner in *Holly* contended that, under *both* statutory law and the due-process clause (whether of the Illinois Constitution or the United States Constitution or both is unspecified), he had a clear right to mandatory supervised release that was free of the condition of electronic home monitoring. *Id.* at 156. If, as we had held in *Ashley*, "Illinois law create[d] no more *rights* for inmates than those which [were] constitutionally required" (emphasis in original) (*Ashley*, 316 Ill. App. 3d at 1258), the plaintiff's statutory argument would have been superfluous, and the supreme court could have proceeded directly to his alternative, constitutional theory. But the supreme court painstakingly construed the relevant statutory provisions and concluded:

"Contrary to [the plaintiff's] arguments, the [Prisoner Review Board (Board)] has the statutory authority to impose electronic home confinement as a condition of his mandatory supervised release. [The plaintiff] has no right, let alone a clear right, to demand that the Board release him from [electronic home confinement] during his [mandatory supervised release] because the imposition of that condition was a proper exercise of the Board's statutory discretion. Without a clear showing of his affirmative right to relief, [the plaintiff] has failed to establish his right to *mandamus* relief, and his complaint must fail." *Holly*, 231 Ill. 2d at 164-65.

That quoted paragraph—and indeed the five or so pages of statutory construction in *Holly*—would have been pointless if, as we said in *Ashley*, the only right a prisoner could vindicate in an action for *mandamus* was a constitutional right. The supreme court has long held that by an action for *mandamus*, a prisoner may compel the performance of a purely statutory duty. See *People ex rel. Abner v. Kinney*, 30 Ill. 2d 201, 207 (1964).

¶ 100 This is not to throw the door open to petty litigation. In an action for *mandamus*, not only must the legal duty of the public official be clear and nondiscretionary (*People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 192-93 (2009)), but the plaintiff must have a strong equitable case (*Thomas v. Village of Westchester*, 132 Ill. App. 3d 190, 196 (1985)). Recreational litigation, even if technically meritorious, should not win a writ of *mandamus*, which is an "extraordinary remedy." *Id.* "The writ of *mandamus* is not a writ of right," and even if the plaintiff has shown a clear ministerial duty on the part of the public officer, a court nevertheless may, in its discretion, refuse to issue the writ if the court is unconvinced the writ would accomplish "substantial justice" outweighing the disruption the writ might cause. *People ex rel. Stettauer v. Olsen*, 215 Ill. 620, 622 (1905); see also *Thomas*, 132 Ill. App. 3d at 196. Similarly, it must appear that the petitioner for a writ of *certiorari* has suffered a "substantial injury or injustice." *Stratton*, 133 Ill. 2d at 428.

¶ 101 III. CONCLUSION

¶ 102 For the foregoing reasons, we affirm the trial court's judgment in part and reverse it in part, and we remand this case for further proceedings consistent with this opinion.

¶ 103 Affirmed in part and reversed in part; cause remanded.